## WATSON A. Fox, Plaintiff in Error, *v.* CHARLES G. KIT-TON, Defendant in Error.

### ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

Where a mortgage of a vessel provides for taking possession, not only in default of payment, but if there should be danger of losing the debt, or a part of it, if collection should be delayed until the time limited for its payment should expire; although further time of payment should be given upon a new note, with security, upon the condition that certain suits should be discontinued, etc., and the vessel run in a particular trade, and her earnings applied in a particular manner; yet, as the mortgagor was, by the mortgage, constituted sole judge as to the time when he should act, and the crisis having in his opinion arrived, he was justified, notwithstanding the new note, and the other conditions accompanying it, in pursuing his remedy under the mortgage; as it will be presumed he did not intend to abridge the powers granted him in the mortgage, without a consideration—which does not appear to have been given. No argument can be drawn from the supposed hardship of such a case; if such contracts are not unconscionable, or do not originate in fraud, or are not prohibited by law, the parties must be bound by them.

The declarations of the mortgagor, that he would not act upon the terms of the agreement extending time to him, justified the mortgagee in acting promptly against the vessel.

Where a party agrees to do an act at a future day, and before the day arrives he declares he will not keep his contract or do the act, the other party may act on such declaration, and bring an action before the day arrives.

THIS was an action of replevin, brought by the plaintiff in error against the defendant in error, in the Cook county Court of Common Pleas, on the ninth day of July, 1855, to recover possession of the brig Lowell, of Buffalo.

The record shows the filing of the affidavit, the issuing of the writ, the bond to the sheriff, and the execution of the writ, by the taking and delivery of the brig to the said plaintiff.

The declaration is in the detinet, and contains only one count.

The pleas are *non-detinet*, and *property in the defendant*, upon which issues are regularly joined. And on the 16th September, 1857, at September term of said court, said case was tried by jury, JOHN M. WILSON, Judge, presiding.

The evidence for plaintiff was a mortgage by defendant to plaintiff of the brig Lowell, as follows:

*To all to whom these Presents shall come, greeting:*

KNOW YE, That I, Charles G. Kitton, of the town of St. Clair, in the State of Michigan, and sole owner of the brig or vessel called the Lowell, of Buffalo, of the burthen of two hundred and fifty-five 90-95 tons, or thereabouts, of the first part, being justly indebted to Watson A. Fox, of the city of Buffalo, State of New York, of the second part, in the sum of five thousand four hundred dollars, upon part of the purchase money of said vessel, have, for the purpose of securing the payment of the said debt, and the interest thereof, granted, bargained, sold and

Fox *v.* Kitton.

mortgaged, and by these presents do grant, bargain, sell and mortgage unto the said party of the second part, his executors, administrators and assigns, all said brig or vessel, together with all of the masts, bowsprit, sails, boat, anchors, cables, and all other necessaries thereunto appertaining and belonging. The certificates of the enrollment, of which said brig Lowell, or vessel, is as follows, to wit :

### ENROLLMENT.

No. 44, TEMPORARY DISTRICT OF BUFFALO CREEK,
PORT OF BUFFALO.

In conformity to an act of Congress of the United States of America, entitled "An act for enrolling and licensing ships and vessels," etc., passed the 18th February, 1793, and "An act to regulate the foreign and coasting trade in the Northern, North-eastern and North-western frontiers of the United States, and for other purposes," passed the 2nd March, 1831 ; and "An act to provide for the better security of the lives of passengers on board vessels propelled in whole or in part by steam," passed 7th July, 1838. And also, "An act to provide for recording the conveyances of vessels, and for other purposes," passed July 30, 1850, Charles G. Kitton, of St. Clair, Michigan, having taken or subscribed the oath required by the said acts, and having sworn that he is a citizen of the United States, and sole owner of the brig or vessel called the Lowell, of Buffalo, whereof Charles G. Kitton is at present master, and as he hath sworn, a citizen of the United States ; and that the said ship or vessel was built at Buffalo, New York, in the year 1848, as appears by her last enrollment, dated at this port, February 22nd, 1853, No. 9, now surrendered ........:............................having changed owners. And the said enrollment having certified that the said brig or vessel has one deck, and two masts, and that her length is one hundred and twenty-one feet and seven inches, (121 ft. 7 in.,) her breadth twenty-four feet and two inches, (24 ft. 2 in.,) her depth nine feet and four and three-fourths inches, (9 ft. 4¾ in.,) and that she measures two hundred and fifty-five tons, 90 ninety-fifths ; that she is a brig, has a scroll and head.

And the said Charles G. Kitton having agreed to the description and measurement above specified, and sufficient security having been given, in conformity with the terms of said acts, the said brig has been enrolled at the port of Buffalo, New York.

[L. S.]

Given under my hand and seal of office, at the Port of Buffalo, in the said district, this 25th day of March, in the year one thousand eight hundred and fifty-four.

D. HOFFMAN,
*Dep. Collector.*

To have and to hold the said brig Lowell, or vessel, tackle, apparel, furniture, and appurtenances thereunto belonging, unto him, the said Watson A. Fox, his executors, administrators and assigns, to the sole and only proper use, benefit and behoof of him, the said Watson A. Fox, his executors, administrators and assigns forever.

*Provided,* always, and the condition of these presents is such, that if the said party of the first part, his executors or administrators, shall pay or cause to be paid to the said party of the second part, his executors, administrators or assigns, the debt aforesaid, with the interest thereof, from the twenty-third day of March, 1853, in manner following, to wit :

Four hundred dollars and interest thereon, in sixty days from March 23rd.

Twelve hundred and fifty dollars, and interest thereon, in three months from March 23rd.

Twelve hundred and fifty dollars, and interest thereon, in six months from March 23rd.

Fox *v.* Kitton.

The same being James Baby's notes, indorsed by Charles G. Kitton, dated March 23rd, 1854, and payable at White's Bank of Buffalo, with interest.

Twelve hundred and fifty dollars, with interest thereon, in fifteen months from March 23rd, 1854.

Twelve hundred and fifty dollars, and interest thereon, in eighteen months from March 23rd, 1854, being James Baby's drafts, indorsed by Charles G. Kitton, accepted by E. J. Merrick, and payable at the Sackett's Harbor Bank, at Buffalo, with interest, amounting in all to fifty-four hundred dollars; then these presents shall be void and of no effect, subject, however, to the provisions hereinafter contained, and the said party of the first part does agree to pay the same accordingly.

But if default be made in such payment, or if the said party of the second part shall at any time deem himself in danger of losing the said debt, or any part thereof, by delaying the collection thereof until the expiration of the time above limited for the payment thereof, the said party of the second part is authorized to take possession of the said brig Lowell, or vessel, and all the before-mentioned property and appurtenances, at any time either before or after the expiration of the time aforesaid, and to sell and convey the same, or so much thereof as may be necessary to satisfy the said debt, interest and reasonable expenses, after a notice of ten days, to be given by advertising daily in the *Buffalo Commercial,* and a daily paper in Detroit, Michigan, and to retain the same out of the proceeds of such sale; the overplus (if any) to belong and be returned to the said party of the first part.

*And it is further agreed,* That on such sale, the party of the second part, his executors, administrators or assigns, may become the purchaser or purchasers.

And the said party of the first part does further covenant and agree to and with the said party of the second part, his executors, administrators and assigns, that he will procure the said brig Lowell, or vessel, to be insured against loss or damage by fire, and also against all marine risk and disasters, in some good and responsible insurance company or companies, to be selected or approved by the said party of the second part, for an amount at least equal to the amount which shall from time to time remain unpaid upon the said indebtedness, and that he will keep such policy or policies of insurance renewed from time to time, and will keep the same assigned to the said party of the second part until the said indebtedness is paid, as a collateral security for the payment of said indebtedness. And if the said party of the first part shall at any time fail to procure and assign such policy or policies of insurance, or shall fail at any time to renew the same, the said party of the second part, his executors, administrators or assigns, are hereby authorized to renew such policy or policies of insurance, and the amount which he shall be compelled to pay therefor shall be considered a part of the indebtedness hereby intended to be secured, and shall be repaid to the said party of the second part, his executors, administrators or assigns, on demand, with interest from the time of such payment.

*In Witness Whereof,* The party of the first part has hereunto set his hand and seal, this twenty-third day of March, in the year of our Lord one thousand eight hundred and fifty-four.

Which was duly recorded in the book of mortgages at Detroit, by the deputy collector.

34

And thereupon the plaintiff, for the purpose of further sustaining the issue on his part, introduced as a witness in the said cause, *James Van Inwazen,* who being first duly sworn, testified as follows:

I knew both plaintiff and defendant in the spring and summer of 1855. I was the agent of the said plaintiff at Chicago. I remember the time and the circumstances of the replevy of the brig Lowell in this suit. I acted as the agent of the said plaintiff in making said replevy. A few days before the replevy of the brig Lowell, I received a letter from the plaintiff, informing me that the brig had sailed for Chicago, and requesting me to assist the defendant, Capt. Kitton, in procuring a cargo to Buffalo, and also to collect the up freight of the brig on his account. After receiving the letter, and on learning that the brig Lowell had arrived in port, I went in search of the master, Capt. Kitton, and found him on board the brig, then lying at or near the foot of Michigan Avenue, in the Chicago river, where I think she was discharging part of her cargo. I commenced a conversation with him about a return cargo, and told him that I was instructed by Mr. Fox to assist him in procuring a cargo to Buffalo, and that I was ready to do so. He said he did not want to go to Buffalo. That he knew Mr. Fox, and had had trouble with him the winter before, and that he did not want to go where Mr. Fox was. I asked him what he proposed to do with the brig. He said he thought he would go after a load of lumber. I then left him and immediately informed Mr. Fox either by letter or telegraph, that Capt. Kitton refused to take a cargo for Buffalo. And I was thereupon instructed by Mr. Fox to get possession of the brig under the chattel mortgage, if Capt. Kitton still refused to take a cargo for Buffalo. I then got the sheriff of Cook county to go with me, and went on board the brig then lying in the South Branch of Chicago river, where it had been removed, as I understood, to complete the discharge of her cargo. I saw Capt. Kitton there. I told him I was instructed by Mr. Fox to take possession of the brig, unless he would receive a cargo for Buffalo. I told him that freights were good, and advised him to take a cargo for Buffalo. Said he did not want to go to Buffalo. I then showed him the chattel mortgage, previously in evidence, and demanded possession of the brig under it for Mr. Fox.

Capt. Kitton refused to give me possession of the brig, and I immediately informed Mr. Fox of this refusal and received in reply a telegraphic dispatch instructing me to replevy the brig at once, and I did so. It was several days between my first interview with Capt. Kitton and the replevying of the brig. After getting possession of the brig, I had her repaired, put

another captain on board, and sent her with a full freight to Buffalo. When I showed Capt. Kitton the mortgage, he acknowledged that he executed it.

No objections to the delivery of the vessel were made by Capt. Kitton, on the ground that she was not unloaded.

The defendant thereupon, for the purpose of proving the issue on his part, offered in evidence and read to the jury the deposition of *John E. Kitton*, in substance as follows:

I am acquainted with the defendant, Charles G. Kitton. I am not acquainted with the plaintiff. I know the brig Lowell. I know that on the 4th day of December, A. D. 1854, Charles G. Kitton wrote a letter to Watson A. Fox, a true copy of which is hereto attached and marked "Exhibit A," which letter I compared with the copy hereto attached, and then placed the same in the post-office at St. Clair, directed to Watson A. Fox, Buffalo, New York. I know that afterwards, in the same month of December, my brother, Charles G. Kitton, received, through the post-office, a letter from the said Fox, which letter is hereto annexed and marked "Exhibit B." After the reception of Mr. Fox's letter, a note was executed by James F. Baby and indorsed by Charles G. Kitton and myself, which note bears date, St. Clair, 23rd December, 1854, and is hereto attached and marked "Exhibit C." This note was inclosed in a letter and directed to Watson A. Fox, Buffalo, New York, and sent to him by mail. I never received any letter from the plaintiff in relation thereto.

EXHIBIT A.

St. Clair, 4th Dec'r, 1854.

W. A. Fox, Esq., Buffalo,

Dear Sir :—Owing to the bad luck with the vessel, and breaking of the Welland Canal, where we were detained nearly six weeks, and the failure of E. G. Merrick & Co., we are under the necessity of asking an extension of time on each of our notes, for six months, which we trust you will use your interest to procure. The tightness of the money market in Canada is such, that our Mr. Baby is quite unable, under any circumstances, to raise funds to meet the note now due. The last two notes we could meet, if we could get eighteen months on the one due.

The vessel is now laid up, where we intend to make the necessary repairs, and fit her out for an early spring business, provided we can get the necessary extension. Mr. Baby has still two cargoes of staves ready for shipping, which we will take in the spring, provided we can get nothing better.     C. G. KITTON.

EXHIBIT B.

Buffalo, Dec. 22, 1855.

Capt. Charles G. Kitton,
        St. Clair, Mich.

Dear Sir : Yours of the 4th is received. If I extend the time on the note past due, you must give me a new note, with good indorsers on it.

Fox v. Kitton.

Where is the Lowell laid up ? In what port, and how far from any buildings ? I have to notify the Insurance Company, and obtain their acceptance of the place where laid up, or the policy won't be good. Please write me at once.

Yours Truly, W. A. FOX.

EXHIBIT C.

St. Clair, 23rd Dec'r, 1854.

$1315.627.

On the first day of July, one thousand eight hundred and fifty-six, for value received, I promise to pay Charles G. Kitton or order, at White's Bank, in Buffalo, the sum of one thousand three hundred and fifteen dollars and sixty-two cents, with interest. JAMES F. BABY.

Indorsed, CHARLES G. KITTON,
JOHN E. KITTON.

Defendant then read the deposition of *Augustus Van Buren*, in substance as follows :

I am acquainted with the parties, both plaintiff and defendant ; I have been acquainted with the defendant, Charles G. Kitton, over two years ; I have been acquainted with the plaintiff, Watson A. Fox, since the latter part of April last past ; I am an attorney and counsellor at law ; I am no relation to either of the parties to this suit ; I know the brig Lowell ; on or about the twelfth day of February, in the year of our Lord one thousand eight hundred and fifty-five, the brig Lowell was advertised to be sold, under a mortgage from the defendant to the plaintiff, by one Horatio N. Farnham, as assignee of said plaintiff ; by the advertisement, the sale was to take place on the 22nd day of February, last mentioned ; on or about the twentieth of February, aforesaid, I, as the solicitor for said defendant, (Kitton,) commenced a suit in chancery, in the Circuit Court, for the county of St. Clair, in chancery, against the said Farnham, and the plaintiff, Fox, and obtained an injunction from said court, restraining the said Farnham and Fox, their counsellors, attorneys, solicitors and agents, from, in any manner, proceeding with said sale of said brig Lowell.

On the twenty-second day of February, aforesaid, I served said injunction upon the agent of said Farnham, while he was proceeding with the sale of said brig Lowell. In the latter part of April last past, I went to Buffalo, as the agent of the defendant, Charles G. Kitton, for the purpose of settling the matter in relation to the brig Lowell, between the plaintiff and defendant. I was attorney in a suit in the Circuit Court for the county of St. Clair, in chancery, for the defendant, against Watson A. Fox and Horatio N. Farnham, in reference to the brig Lowell, which said suit the said Kitton stipulated to discontinue, without costs, by a written stipulation, a copy of which

Fox v. Kitton.

is hereby annexed, and marked " Exhibit D." The stipulation was entered into by request of the said Fox, and the conditions contained in his letter of May 19th, 1855, and heretofore marked " Exhibit C." I sent to said Fox a duplicate of that stipulation. In my office, at St. Clair, the said agent delivered to Charles G. Kitton, in my presence, the note hereto attached, and marked " Exhibit C," in the testimony of John E. Kitton.

EXHIBIT B.

*Buffalo, May 10, 1855.*

A. Van Buren, Esq. St. Clair,

*Dear Sir:* — I find it impossible to leave here, as I anticipated when you was here. Please make me a proposition for a settlement, and payment of the amount my due on the brig Lowell, and if it is a favorable one, I will accept it. In the meantime, I will inform you that I have instructed Mr. Grace to discontinue my or Farnham's suit against the brig Lowell. Have you discontinued Mr. Kitton's suit? Please state in your letter to me that the suit has been discontinued. The Lowell should be insured before she leaves port, for my benefit. Has this been attended to? Please let me hear from you, and name the Co. that has insured her.

Yours Truly,     W. A. FOX.

EXHIBIT C.

*Buffalo, May 19, 1855.*

A. Van Buren, Esq., Attorney, &c.,
        For Charles G. Kitton, St. Clair,

*Dear Sir:* — I acknowledge the receipt of your letter of the 17th inst.

Charles G. Kitton is owing me some $4,500 on his and Baby's paper, secured by a mortgage made by said Kitton to me, upon the brig Lowell, which amount he has neglected and refused to pay. In February last, at that time an assignee of said mortgage, commenced a foreclosure of the same; said Kitton served an injunction upon Farnham and myself, and stopped the sale. In March last, said Kitton, at great expense, and in defiance of all law, undertook to deprive me of my legal rights, and to prejudice my interest in said vessel, by cutting her through the ice, and taking her into a foreign country, since which time he has had a full crew on board, at a very heavy expense, which either he or myself has got to pay, as you have informed me the vessel now lies in Canada, where, you say, she shall remain the balance of the season, unless I comply with his unreasonable and dictatorial requests. I have, for one year, been very lenient to Mr. Kitton, and don't much like to have favors extorted from me. Mr. Kitton honestly owes me this debt, and all I want is my pay. Either Mr. Kitton or myself is losing money, by allowing the vessel to remain so long idle, unemployed, and under expense, which must be heavy.

Taking all the circumstances into consideration, I will consent to the following terms of settlement:

The suit commenced by Mr. Kitton against Mr. Farnham and myself, in St. Clair county, Michigan, shall be immediately discontinued, without costs to me, or

Fox *v.* Kitton.

if the suit cannot be discontinued until your next term of court, that it shall be on that day; and that Mr. Kitton, to execute a stipulation at once, which he is to send to me, *giving me notice that the suit has been discontinued.*

The brig Lowell is to be engaged until my mortgage, Kitton's and Baby's indebtedness to me, is paid, running between Buffalo and Chicago, and that she is not to be engaged in any other trade without my knowledge or consent.

The net earnings of said brig are to be paid over to me as fast as earned, which amounts are to apply towards the liquidation of Kitton's and Baby's indebtedness to me.

If at any time Kitton and Baby desire to give me a satisfactory paper, I will extend a portion of my mortgage, if the vessel cannot pay all this season.

I will extend the time upon my mortgage upon the brig Lowell, under the foregoing conditions.

Yours Truly,            W. A. FOX.

EXHIBIT D.

STATE OF MICHIGAN.

THE CIRCUIT COURT FOR THE COUNTY OF ST. CLAIR. IN CHANCERY.

CHARLES G. KITTON,
    *vs.*
WATSON A. FOX and
HORATIO N. FARNHAM.

It is hereby stipulated that the above suit shall be, and the same is hereby discontinued without costs.

CHARLES G. KITTON.

*May* 22d, 1855.

HORATIO N. FARNHAM,
    *vs.*
CHARLES G. KITTON.

It is hereby stipulated that the above suit may be discontinued without costs.

CHARLES G. KITTON.

*May* 22d, 1855.

The counsel for the plaintiff then asked the court to instruct the jury as follows:

1st. If the jury believe, from the evidence, that the defendant had, previous to the issuing of the writ of replevin in this case, made default in the payment of any of the sums of money secured by the mortgage on the brig Lowell, and that the plaintiff, by himself or his agent, demanded possession of said brig before the issuing of said writ, on account of such default, or his fear of losing his debt, then the law is for the plaintiff.

2nd. If the jury believe, from the evidence, that the plaintiff and defendant made an agreement, after default made by the defendant in the payment of the notes or drafts mentioned in and secured by the mortgage on the brig Lowell, by which the said brig was to remain in the possession of said defendant, on certain

conditions, notwithstanding such default; then if the jury further believe, from the evidence, that the defendant failed to observe and comply with the conditions of such agreement, and that the said plaintiff thereupon, and before the issuing of the writ of replevin in this case, demanded the possession of said brig, under said mortgage, they must find for the plaintiff.

3rd. The jury are instructed that any agreement to extend the time of the payments of the money secured by the mortgage, would not of itself suspend or take away the right of the plaintiff to take possession of the brig Lowell, under the mortgage, if he deemed his debt unsafe.

The third of which said instructions so asked for the plaintiff was refused by the court, and to the ruling and decision of the court in refusing said third instruction, the plaintiff, by his counsel, excepted.

The defendant, by his counsel, then asked the court to instruct the jury as follows:

If the jury believe, from the evidence, that the defendant *did no act* to violate the contract contained in the letter of the 19th day of May, 1855, or was prevented by the acts of the plaintiff from complying with the terms of that letter, they will find a verdict for the defendant, though they may believe that the defendant told the plaintiff's agent, that he would not continue in the Buffalo and Chicago trade, as provided in the proposition for an extension of time, contained in the letter of May 19th, 1855.

If the jury find that the defendant, on his part, performed the contract contained in the letter of the 19th May, A. D. 1855, they will find a verdict for the defendant.

That the letter of the 19th day of May, 1855, is to be considered as an extension of time, and a *modification of the mortgage*, and if the jury find that the defendant has kept the conditions on his part, or that he was prevented from performing by the act of the plaintiff, they will find a verdict for the defense.

If the jury find a verdict for defendant, they will also find for him the value of the use of said property from the time of replevin of the property till the present time.

All of which were given by the court; and to the giving of said instructions and each of them, the plaintiff, by his counsel, excepted.

The jury returned into court with the following verdict:—
"We, the jury, find for the defendant, and assess the damages at five thousand two hundred and seventy-five dollars."

And thereupon, the plaintiff, by his counsel, moved the court to set aside the verdict of the jury so rendered as aforesaid, and

to grant a new trial in said cause. Which motion was overruled by the court, and judgment rendered on said verdict.

The refusal of the court to allow the plaintiff to introduce evidence of the way in which said defendant understood the proposition of said plaintiff contained in his letter of May 19th, 1855, the refusal of the court to give the third instruction asked for by the plaintiff, the giving of the instructions asked for by the said defendant, and the overruling of said plaintiff's motion for a new trial, are now assigned for error.

SCATES, McALLISTER, JEWETT & PEABODY, for Plaintiff in Error.

E. VAN BUREN, and SHUMWAY, WAITE & TOWNE, for Defendant in Error.

BREESE, J. The questions in this case arise out of the refusal of the court below to give the third instruction asked by the plaintiff, and giving the instructions asked by the defendant.

To determine these correctly, the facts must be understood. The action was replevin for the brig Lowell, in which the right of possession was the controlling question. The plaintiff claimed the right to the immediate possession of the brig, in virtue of a chattel mortgage, executed by the defendant to him on the 3rd day of March, 1854, to secure certain notes. One of these notes, for $1,200, payable six months after date, having become due, the defendant, on the 4th December, 1854, wrote as follows to the plaintiff: "We are under the necessity of asking an extension of time on each of our notes for six months. The last two notes we could meet if we could get eighteen months on the one due." On the 22nd December, the plaintiff replies: "If I extend the time on the note past due, you must give me a new note, with good indorsers on it."

On the 23rd of December, a note, with two indorsers, was sent by mail to the plaintiff, but not in conformity with the proposals in defendant's letter of the 4th December. In that letter, he asks for eighteen months on the note past due, to which plaintiff assented as above. Now, the note executed and sent by mail was payable some days beyond the eighteen months, but as no point is made on that by the plaintiff, it will not be considered. The indorsers were shown to be good, though, perhaps, not satisfactory to the plaintiff.

On the 22nd February, 1855, the plaintiff undertook to sell the brig, she being in the waters of the State of Michigan, under his chattel mortgage, whereupon the defendant obtained

Fox *v.* Kitton.

an injunction in the Circuit Court of St. Clair county, in that State, to prevent the sale.

While matters were in this condition, a proposition for a settlement of their differences was entertained by the parties, which resulted in the following letter from the plaintiff to the attorney of the defendant:

*Buffalo, May* 19, 1855.

A. Van Buren, Esq.,

    *Attorney for Charles G. Kitton, St. Clair.*

*Dear Sir:* I acknowledge the receipt of your letter of the 17th inst. Charles G. Kitton is owing me some $4,500 on his and Baby's paper, secured by a mortgage, made by Kitton to me, upon the brig Lowell, which amount he has neglected and refused to pay. In February last, H. N. Farnham, at that time an assignee of said mortgage, commenced a foreclosure of the same. Said Kitton served an injunction upon Farnham and myself, and stopped the sale. In March last, said Kitton, at great expense, and in defiance of all law, undertook to deprive me of my legal rights, and to prejudice my interest in said vessel, by cutting her through the ice, and taking her into a foreign country, since which time he has had a full crew on board, at a very heavy expense, which either he or myself has got to pay, as you have informed me the vessel now lies in Canada, where, you say, she shall remain the balance of the season, unless I comply with his unreasonable and dictatorial requests. I have, for one year, been very lenient to Mr. Kitton, and don't like much to have favors extorted from me. Mr. Kitton honestly owes me this debt, and all I want is my pay. Either Mr. Kitton or myself is losing money by allowing the vessel to remain so long idle, unemployed and under expense, which must be heavy. Taking all the circumstances into consideration, I will consent to the following terms of settlement: The suit commenced by Mr. Kitton against Mr. Farnham and myself, in St. Clair county, Michigan, shall be immediately discontinued, without costs to me; or, if the suit cannot be discontinued until your next term of court, that it shall be on that day; and that Mr. Kitton, to execute a stipulation at once, which he is to send to me, giving me notice that the suit has been discontinued. The brig Lowell is to be engaged until my mortgage, Kitton's and Baby's indebtedness to me, is paid, running between Buffalo and Chicago, and that she is not to be engaged in any other trade without my knowledge or consent. The net earnings of said brig are to be paid over to me as fast as earned, which amounts are to apply towards the liquidation of Kitton's and Baby's indebtedness to me. If, at any time, Kitton and Baby desire to give me satisfactory paper, I will extend a portion of my mortgage, if the vessel cannot pay all this season. I will extend the time upon my mortgage upon the brig Lowell under the foregoing conditions.

The suits were discontinued as proposed.

The mortgage of the brig contains this clause: "But if default be made in such payment, or if the said party of the second part shall, at any time, deem himself in danger of losing the said debt, or any part thereof, by delaying the collection thereof until the expiration of the time above limited for the payment thereof, the said party of the second part is authorized to take possession of the said brig Lowell, or vessel, etc., and

to sell and convey the same, or so much thereof as may be necessary to satisfy the said debt, interest and reasonable expenses," etc.

It is insisted by the defendant that this agreement of 19th May, 1855, is a new contract, abrogating, *proprio vigore*, this stipulation in the mortgage, and his counsel argue, with much apparent confidence and great ingenuity, that such, and no less, is the effect of this letter ; that it was a compromise grounded on their mutual fears, and so long as the defendant complied with the conditions prescribed in that letter, the plaintiff could not take possession of the brig.

We must suppose that the plaintiff is a man of at least ordinary sense and intelligence, having tolerable knowledge of his rights, and a desire to protect them. Being such a man, it is scarcely probable he would give up the best kind of security for that of an inferior nature. The power to sell under the mortgage, for the reason therein stated, imparted the highest value to it, and that the plaintiff should surrender it, without some equivalent, is not reasonable, and he cannot be held so to have done, except upon satisfactory proof.

If the letter of May 19th is to be considered a contract, it must have, like other contracts, a reasonable construction, according to the intention of the parties, to be gathered from the instrument itself, and manifested by the words used, keeping in view, all the time, the subject matter of the contract. What was the subject matter of this contract ? What most engaged the minds of the parties ? An extension of time of payment, and the security to be given, if the extension was allowed, and as incidental, the employment of the vessel and the appropriation of her earnings. Not the most remote allusion is made to a release of any higher security the plaintiff possessed, or even to a relaxation of the power he held over the vessel by the mortgage.

Had it been in the contemplation of the parties that this valuable power was to be relinquished by the plaintiff, it is incomprehensible that business men—for such the parties appear to be—should not have distinctly provided for it, and not left it to mere inference.

" The brig Lowell is to be engaged, until my mortgage, Kitton's and Baby's indebtedness to me, is paid, running between Buffalo and Chicago, and she is not to be engaged in any other trade without my knowledge or consent." This is a very clear stipulation, and shows, that the plaintiff, notwithstanding additional security was given, on the time being extended, claimed the benefit of his whole mortgage, and as a further precaution, the plaintiff, living at Buffalo, and his agent, Van Inwa-

Fox *v.* Kitton.

zen, in Chicago, admonished by the attempt to which the plaintiff alludes in his letter of May nineteenth, of the defendant to deprive him, in March preceding, of this property, by cutting her out of the ice, and taking her to a foreign jurisdiction, to remain idle, with a full crew on board, at a heavy expense, for which the vessel was liable, he expressly stipulates that she shall remain, until his debt is paid, under his own eye, in a particular trade, and her net earnings paid over to him as fast as earned. He engages, further, to extend the time on the mortgage, if satisfactory paper was given him in lieu of .that which he then held, given him by the defendant, and which he could not have deemed satisfactory, provided the vessel could not pay all that season. Great indulgence and liberality seem to have been extended towards the defendant, notwithstanding the conduct with which the plaintiff had reproached him, and the unfair treatment he complains he had received at the hands of the defendant.

Recurring to the terms of the mortgage, it provides for taking possession, not only on default of payment, but if the plaintiff shall, at any time, deem himself in danger of losing the debt, or any part of it, by *delaying* its collection until the expiration of the time limited for its payment.

The object of both parties being, the one to give, and the other to possess, the highest security for the payment of the money, and mutual confidence then existing between them, the plaintiff was constituted the sole judge of the crisis in which he could act, and however long the time may have been extended within which to pay the debt, or whatever additional personal security may have been asked and given, they necessarily come under the stipulations in the mortgage, and are to be governed and controlled by them. If default was made on the new security, it is not doubted that the plaintiff could take possession and sell; equally so, if at any time after the extension and new security given, he should judge he was in danger, notwithstanding all his caution, of losing the debt thus attempted to be secured; it is so " nominated in the bond." There is nothing in the whole transaction of May nineteenth, manifesting an intention, by either party, to abridge the power the plaintiff had acquired by his mortgage ; that was to remain in full force, and if the plaintiff shall, in the language of defendant's counsel, demand his " pound of flesh," the court cannot refuse to award it.

We do not think, with defendant's counsel, that it was necessary, in this new arrangement of May nineteenth, " to reserve " this power. The question is, does that arrangement take it away expressly, or by any reasonable implication ? No argument can be drawn from the supposed hardship of the case, as parties of full age are supposed capable of making their own

contracts, and when made, if they are not unconscionable, originating in fraud, or prohibited by law, they must be bound by them.

Such stipulations are understood to be the common rule of such sales, and why, in this case, it should be stigmatized as arbitrary and tyrannical, not to be sanctioned by the court, and to be considered, against the facts of the case, as waived, it is unnecessary to conjecture.

Considering the many vicissitudes of fortune to which the vessels navigating our seas and lakes and great rivers, are subject, it is but a mark of ordinary prudence that the vendor of a ship should fully protect himself, so far as he can, against them, especially where the sale is made to the captain, whose powers over it are so much without control, and so extensive.

But, it is urged, the agreement to run the vessel between Buffalo and Chicago, superseding, as it did, this stipulation in the mortgage, has been performed, and the *casus belli* has not yet arisen. We have endeavored to show that this arrangement surrenders none of the plaintiff's rights under the mortgage, and that danger of loss was sufficient to prompt the party to act, though the time of payment had been extended.

The views we have presented disapprove of the ruling of the court, in refusing the third instruction asked by the plaintiff; those of the defendant which were given, present his view of the case, which we will consider.

A recurrence to the testimony will show the grounds on which the plaintiff's agent at Chicago, Van Inwazen, acted in taking possession of the vessel by a writ of replevin; and the question arises, do the declarations and conduct of the defendant on that occasion amount to a renunciation of the agreement of May nineteenth?

The defendant's counsel insist, that his declarations that he did not wish to go to Buffalo, that he thought he would go in another direction, for a load of lumber—that he did not want to go where the plaintiff was—were but air, and as they were unaccompanied by any act, manifest nothing; that he had a right to his own thoughts, and to utter his own opinions, he occupying a *locus pœnitentiæ*, and only to be concluded by actually sailing his vessel to some port or place other than Buffalo. These wishes and opinions, they urge, might change with the passing hour, and from his refusing to accept the services of the plaintiff's agent, to procure a cargo for Buffalo, nothing can be inferred, as he was not required to consult him on that subject, and that they all do not make up a contingency on which the plaintiff was authorized to act.

It is on this view the first instruction asked by defendant is

Fox *v.* Kitton.

based, and which, it is insisted, was properly allowed by the court.

It is said this is an executed, not an executory, contract, the terms of which cannot be broken by mere declarations—that they cannot constitute a breach.

A contract is said to be executed when nothing remains to be done by either party. Whilst any act remains to be done, the contract is understood to be executory, and the rules of law governing these two descriptions of contract are, necessarily, different. Examples and illustrations are unnecessary, as we are all familiar with the distinction.

In this case, a part, at least, of the consideration of this new contract was executed; the chancery suits were dismissed; the credit was extended, and the possession of the vessel remained with the defendant; but the condition on which these provisions depended left something remaining to be done by the defendant. He was to employ the vessel in a particular trade, and pay over the net earnings as they accrued to the plaintiff. The contract for extension of time was executory as to these conditions, and necessarily so remained. The right of the defendant to use the vessel was upon condition that he run her in the trade between Buffalo and Chicago, and paid over the net earnings to the plaintiff. A condition in a contract does not depend upon any formal arrangements of the words, but, as we have said of contracts generally, upon the intention of the parties as collected, in each particular case, from the terms of the contract itself, and from the subject matter to which it relates. These clauses, going to the whole of the consideration, must therefore be read as a condition; and as it covers the whole ground of the contract, and cannot be severed from it, or from any part of it, it follows, necessarily, that a breach of the condition is such a breach of the whole contract as to give the other party the right of avoiding or rescinding it altogether.

We are disposed to attach more importance, under the circumstances of this case, to the conduct and declarations of the defendant at Chicago than his counsel seem to do, and are disposed to regard them as affording good grounds for prompt action on the part of the plaintiff, and as conferring the right upon him of avoiding the contract altogether. The defendant had agreed, for the season ensuing the 19th of May, to run the vessel in the Buffalo and Chicago trade, and pay over the net earnings as fast as earned, to the plaintiff. His undertaking, it seems to us, is of that description and falls within that class of cases to which we have been referred, where a party agreeing to do an act at a future day, and before the day arrives, declares he will not keep his contract or do the act, that the other party may act on the

declaration and bring an action before the day arrives. There is, really, no conflict between the cases cited, on this principle; they all turn on the fact, whether the party acted or not, on the declaration. PARKE BARON, in the case of *Phillpotts* v. *Evans*, 5 Meeson & Welsby, 477, the case principally relied on by the defendant's counsel, says : " The notice (that he will not receive the wheat) amounts to nothing, until the time when the buyer ought to receive the goods, *unless the seller acts on it in the mean time, and rescinds the contract*," by selling to another person, or otherwise.

This is in strict accordance with the principle recognized in the leading case relied on by the plaintiff : *Hochsta* v. *De Latour*, 20 Eng. L. and E. Rep. 157.

Lord Chief Justice CAMPBELL says, in this case : " It cannot be laid down as a universal rule, that where, by agreement, an act is to be done on a future day, no action can be brought for a breach of the agreement till the day for doing the act has arrived." We think the declarations of the defendant, and his refusal, at Chicago, to accept the services of plaintiff's agent to procure a cargo for Buffalo, gave the plaintiff a right to consider the new contract as repudiated, and justified him in taking possession. He acted promptly on the defendant's declarations. In such a case it would be idle to wait until the vessel was loaded for a different port, and it would make the case no stronger, for, after setting sail for such port, there was the physical possibility that he might change his course, and the same if laden for Buffalo.

The plaintiff had a right to take him at his word, and act accordingly.

The conduct of the defendant at Chicago was such as to create a well founded belief on the part of the plaintiff, taken in connection with his removal of the vessel in March preceding to a foreign jurisdiction, threatening to leave her there, unemployed, with a full crew, at a heavy expense, that his debt was in danger, and warranted him in taking instant possession of the vessel, and exercising over it the rights secured to him by the mortgage. The first three instructions on the part of the defendant should not have been given.

The judgment of the court below is reversed, and the cause remanded to the Cook county Court of Common Pleas for further proceedings not inconsistent with this opinion.

*Judgment reversed.*