GEORGE W. ELDER

*v.*

SIMCOE CHAPMAN.

*Opinion filed October 24, 1898—Rehearing denied December 8, 1898.*

1. CONTRACTS—*right of the buyer to recover consideration advanced by third party where seller is unable to perform.* One who contracts to buy land for which the seller is to furnish a good title, may, upon the seller's declaring the contract rescinded for his inability to give good title, recover the consideration paid, although it represents services rendered by a third party to the seller and advanced by such third party to the buyer at a sum agreed to by the seller.

2. LOTTERIES—*when distribution of land by lot is unlawful.* The distribution of parcels of land of very unequal value by lot is a lottery, and within section 180 of the Criminal Code, (Rev. Stat. 1874, p. 378,) where the drawing is had before the right or title to any part of the land is vested in the ticket holders.

3. SAME—*partition among joint owners by lot is not unlawful.* A partition of property divided into parts of as nearly equal value as possible may be made among the joint owners thereof by lot, to de-

terminé which part shall go to each joint owner, such a transaction not being within the prohibition of the statute against lotteries.

4. SAME—*instance where distribution of land is not a lottery.* A contract between shareholders of a syndicate formed to purchase lots, each share representing a lot sold to the shareholder at a fixed price, from which is to be deducted his *pro rata* share of the profits arising from an auction sale of the choice of lots to shareholders, to be had after all the shares are sold, whereby the lots remaining after there appears to be no choice are to be distributed by lot among shareholders not purchasing a choice, is not illegal, as within the statute against lotteries.

*Elder* v. *Chapman,* 70 Ill. App. 288, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

FLOWER, SMITH & MUSGRAVE, and E. L. WAUGH, for appellant:

Where a party agrees to do an act at a future day, and before the day arrives declares he will not keep his contract or do the act, the other party may act on the declaration and bring an action before the day arrives. *Fox* v. *Kitton,* 19 Ill. 519; *Kadish* v. *Young,* 108 id. 170; *Follansbee* v. *Adams,* 86 id. 13; *Chamber of Commerce* v. *Sollitt,* 43 id. 519; *Roebling Sons' Co.* v. *Fence Co.* 130 id. 666.

A party has a right to break his contract on the terms of being liable for the damages which will accrue for the same at the time he elects to exercise that right; and it is the duty of the other party, when notified thereof, to exert himself to make the damages as light as possible. *Horner* v. *Wilson,* 7 Mich. 304; *Collins* v. *Delaporte,* 115 Mass. 159; *Horr* v. *Slaick,* 35 Ill. App. 140.

Where one person, for a valuable consideration, negotiates with another to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement. *Dean* v. *Walker,* 107 Ill. 540; *Brewer* v. *Dyer,* 7 Cush. 337; *Burton* v. *Larkin,* 36 Kan. 246.

In order to come within the prohibition of the statute a lottery scheme should contemplate the distribution of prizes by chance, and there must be a chance to gain or lose by the drawing. *Dunn* v. *People,* 40 Ill. 465; *Thomas* v. *People,* 59 id. 160; *Lucas* v. *Wallis,* 42 Ill. App. 172.

Where property is distributed by lot and there are no blanks to be drawn, the unequal value of the property to be distributed is a necessary and invariable element to make the transaction a lottery. *Commonwealth* v. *Mauderfield,* 8 Phila. 457; *Schneider* v. *Charles,* 8 Am. Dec. 682; *Bell* v. *State,* 5 Sneed, 507; *Wilkinson* v. *Gill,* 30 Am. Rep. 264; *Eubanks* v. *State,* 3 Heisk. 488; *People* v. *Art Union,* 7 N. Y. 240; *United States* v. *Olney,* 1 Deady, 461; *Commonwealth* v. *Thatcher,* 97 Mass. 583; *Hall* v. *Ruggles,* 56 N. Y. 424; *State* v. *Short,* 3 Vroom, 398; *Wooden* v. *Shotwell,* 23 N. J. L. 465; *Commonwealth* v. *Chubb,* 5 Rand. 715; *Chavannah* v. *State,* 49 Ala. 396; *Thomas case,* 59 Ill. 160; *Dunn case,* 40 id. 465.

The word "lottery," within the meaning of the statute against carrying on lotteries, embraces only schemes in which a valuable consideration of some kind is paid directly or indirectly for the chance to draw a prize. *State* v. *Boniel,* 10 L. R. A. 60; *Yellowstone Kit* v. *State,* 7 id. 590; *Rothrock* v. *Perkinson,* 61 Ind. 39; *Ehrgott* v. *Mayor,* 96 N. Y. 264; *People* v. *Elliott,* 3 L. R. A. 403; *State* v. *Kansas Mercantile Ass.* 11 id. 430; *Wooden* v. *Shotwell,* 23 N. J. L. 465; *Commonwealth* v. *Sheriff,* 10 Phila. 203.

H. STUART DERBY, (EDWARD S. ELLIOTT, of counsel,) for appellee:

Where a contract originates in a transaction forbidden by statute under penalty, though it is not expressly declared void, no action will lie thereon. *Seidenbender* v. *Charles,* 4 S. & R. 151.

Whoever is a party to an illegal contract, if he has once paid the money stipulated to be paid in pursuance thereof shall not have the help of the court to fetch it back again. Browne on Parol Evidence, 63.

If the property subject to disposition possesses unequal values, so that one's good or ill-luck in the scheme of distribution may determine whether he shall receive more or less for his investment, the scheme is a lottery. *Dunn* v. *People*, 40 Ill. 65.

Nor is it less a lottery because the person whose property is distributed or who pays does not personally participate in the drawing. *Flemming* v. *Bills*, 3 Ore. 286.

Where a consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays his money is to have for it, that is a lottery. *Hill* v. *Ruggles*, 56 N. Y. 424; *Wilkinson* v. *Gill*, 74 id. 63.

A lottery is a scheme for the distribution of prizes by chance. *Dunn* v. *People*, 40 Ill. 65.

Every scheme for the disposition of property or money by chance, or any game of hazard, is prohibited by law, and every contract or agreement in aid of such scheme is void, as against public policy. *Rothrock* v. *Perkinson*, 61 Ind. 39.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming the judgment of the circuit court of Cook county. The question involved in this record is whether or not the contract between the plaintiff and the defendant was void as a gambling contract, by virtue of the provisions for the distribution of the lots contained in the proposed syndicate agreement annexed thereto and made a part thereof.

The contract referred to recites the receipt by appellee from appellant of $3000 as part payment towards the purchase of blocks 5 and 6 of a certain subdivision of land, containing ninety-six lots, bargained by appellee to be sold to appellant for $33,000, which said $3000, the declaration avers, one "Robert S. Elder advanced and

paid to the said Simcoe Chapman (appellee) for and on account of the plaintiff, (appellant,) * * * by way of commissions or services, or in some manner satisfactory to the said Chapman; which said $3000 said Simcoe Chapman, in and by said last mentioned agreement, duly acknowledged the receipt of from this plaintiff, and for the re-payment of which to the said Robert S. Elder he then and there became duly obligated to the said Robert S. Elder." The contract further provided that appellant should act as trustee for as many shareholders as there were lots (96), in a syndicate to be formed for the purchase of the lots in accordance with the terms of a form of certificate to be given to each shareholder, thereto attached and made a part of the contract, and that the appellee should accept notes and trust deeds made by future shareholders in the syndicate, in part payment of the said contract price, and the balance in cash upon the delivery of warranty deeds.

The form of certificate provided for and made a part of the contract first recites ·the receipt of $50 from ·a person whose name is left blank and is called "the subscriber," as the "first payment for one share of stock in the syndicate formed for the purchase and development" of the said lots, and then proceeds as follows: "This receipt is given on the following conditions, which the said subscriber hereby accepts: The said fifty ($50) dollars payment is made for the purpose of obtaining a contract with the owner of said premises by G. W. Elder, as trustee for the holders of this and ninety-five (95) other shares of stock in said syndicate. Each share is of the value of four hundred ($400) dollars, and entitles the holder thereof to receive a good and sufficient warranty deed and a merchantable abstract to one lot in the subdivision of said premises, upon the fulfillment of each and every of the conditions herein specified. Said subscriber agrees to further pay the sum of three hundred and fifty ($350) dollars, less one ninety-sixth ($\frac{1}{96}$) part of the profits derived

by sale of choice of lots as hereinafter provided, in the manner following: The sum of fifty ($50) dollars when all of said shares are subscribed for, and the balance on delivery of warranty deed, or in substantially three equal payments, payable in one, two and three years after February 16, 1891, said deferred payments to be secured by trust deed on the lot assigned and conveyed to said shareholder. The assigning of lots shall be under the direction of a board of directors, who shall be elected by the shareholders. Each share shall constitute one vote, and may be voted by the holder of said share or his proxy. Said directors shall notify each of said ninety-six (96) shareholders of the time and place for the assigning of said lots, said notice to be deposited in the post-office of the city of Chicago, with postage prepaid, at least five days before the date of the meeting for the assignment of said lots. At said meeting bids will be received from said shareholders for choice of lots. The highest bidder, in every case, shall immediately select his choice of said lots. Bids will be received for choice of the lots remaining unselected, until there appears to be no further choice, when the remaining shareholders will draw by lot from the remaining unselected lots. Upon the selection of a lot by a shareholder said shareholder shall immediately pay one-fourth of the amount he has bid for choice, in cash. The remaining three-fourths of said amount shall be paid in cash upon delivery of the warranty deed to the lot so selected by said shareholder, or may be divided into substantially three equal payments, consolidated with the deferred payments above mentioned, and all be secured as said deferred payments first above mentioned. No one shall originally subscribe for more than five shares of stock in this syndicate without the consent of the holders of two-thirds of the shares at that time subscribed for. Said subscriber shall receive a warranty deed to the lots selected by him, upon the fulfillment of the conditions hereinbefore mentioned, ten days after the

assignment of said lots as aforesaid. On failure of said subscriber to fulfill each and every of the conditions hereinbefore mentioned at the time and in the manner herein mentioned, (time being the essence of this certificate,) this share of stock in said syndicate shall be forfeited."

The record discloses a plat of said lots with a valuation of each lot marked thereon, ranging from $350 to $1550, and also a bill rendered by R. S. Elder to the appellee, bearing the same date as said contract, February 16, 1891, and receipted by said R. S. Elder, as follows: "To commissions on sale of blocks five (5) and six (6) in North Chicago Lawn, to G. W. Elder, $3000. Received payment by contract to G. W. Elder of even date herewith." The record also discloses a contract dated December 1, 1890, between the appellee and said R. S. Elder, constituting the latter appellee's sole agent for the sale of said lots at the prices named in said plat, and providing for various other matters not pertinent to the issue raised by this appeal; and it also discloses a contract between the two Elders, bearing the same date as that between the parties to this suit, concerning the same property, and providing that R. S. Elder should make the advance payment on the said contract between appellee and appellant, and for a division between themselves of the profits to be realized out of the syndicate transaction,—all of which may be said to be merely preliminary to and explanatory of the circumstances and surroundings attendant upon the making of the contract sued upon.

It is averred in the declaration that Robert S. Elder was the agent and broker for the appellee, and that the foregoing agreement was entered into for the sale of the property to the plaintiff, and thereupon the $3000 for commissions to Robert S. Elder was credited on the account of plaintiff for the purchase money. It is further averred that appellee did not own the premises and could not furnish good and sufficient warranty deeds and a

merchantable abstract, but declared his inability to do so, and on or about the 26th day of August, 1891, revoked the right, power and authority granted in the agreement, and withdrew from the market and withheld from sale all the unsold lots in the subdivision mentioned in the agreement, and that notice of rescission was directed and mailed to the appellant. It is further averred that appellant demanded of appellee the $3000.

After the proof of the signatures to the agreement, appellant offered in evidence the foregoing contract, which was objected to by appellee's counsel as being a gambling contract. Appellant then made a specific offer of proof to sustain all the averments of his declaration, which was also objected to by appellee. Both objections were sustained, and to each ruling of the court in sustaining the objections the appellant's counsel excepted. Thereupon the court instructed the jury to find the issues for the defendant, to which appellant excepted. A verdict was returned as directed, and appellant entered his motion to set aside the verdict and for a new trial, which was overruled and an exception taken, and judgment entered on the verdict. On appeal to the Appellate Court for the First District that judgment was affirmed and this appeal was prosecuted.

This contract having been made and $3000 paid thereon, which was advanced by Robert S. Elder and its receipt acknowledged, to recover which this suit is brought, the question is presented as to whether a buyer contracting for the purchase of a tract of land for which a warranty deed is to be made and a good, merchantable abstract of title furnished and a part of the consideration paid, may recover back the part of the consideration so paid where the seller not only declares that he cannot furnish a good title or a good, merchantable abstract, but also declares the contract rescinded. The right of the purchaser to recover the consideration so paid is clear. *Fox* v. *Kitton*, 19 Ill. 519; *Chamber of Commerce* v. *Sollitt*, 43

id. 519; *Follansbee* v. *Adams,* 86 id. 13; *Kadish* v. *Young,* 108 id. 170; *Roebling's Sons' Co.* v. *Lock Stitch Fence Co.* 130 id. 666.

Section 180 of the Criminal Code (Hurd's Stat. 1895,) in force at the time the contract was made and now, is as follows: "Whoever sets up or promotes any lottery for money, or by way of lottery disposes of any property of value, real or personal, or under pretense of a sale, gift or delivery of any other property, or any right, privilege or thing whatever, disposes of, or offers or attempts to dispose of, any real or personal property with intent to make the disposal of such real or personal property dependent upon or connected with any chance by dice, lot, numbers, game, hazard or other gambling device, whereby such chance or device is made an additional inducement to the disposal or sale of said property,   *   *   *   shall for each offense be fined not exceeding $2000."

Under the statute of this State a lottery scheme, to come within its prohibition, must contemplate the distribution of prizes by chance, and there must be a chance to gain or lose by the drawing. (*Dunn* v. *People,* 40 Ill. 465; *Thomas* v. *People,* 59 id. 160.) Where parcels of land of very unequal value are sought to be distributed by lot, and where the drawing or lottery is to be had before any right or title is vested in the ticket holders to any part of the land, the transaction must be condemned as a lottery. (*Worden* v. *Schotwell,* 23 N. J. L. 465; *Seidenbender* v. *Charles,* 4 S. & R. 151.) So where a scheme provides for the sale of a tract of land in lots of unequal value, to be distributed among the purchasers by chance, by means of tickets of numbers bought at a fixed price greatly exceeding the value of the majority of the lots and much less than the value of other lots, such scheme would constitute a lottery, as it would be a mere device to attract adventurers, holding out the hope of great gain by mere chance. *Schneider* v. *Charles,* 8 Am. Dec. 682.

There is a broad distinction, however, between a division of property by lot and a lottery. A partition of

property into parts as nearly equal as possible, where owned by joint owners, may be made and a determination had by lot as to which part shall go to each joint owner, severally, without coming within the prohibition of the statute. The joint owners being seized of the whole estate before partition, and the object of the lot being to assign to each his particular portion, the whole having been previously divided into parts as nearly of equal value as possible, such partition would not constitute a lottery. Under the contract offered in evidence, and under the offered evidence, it appears that when contracts were made for the sale of all the lots, each and every holder of a share became entitled, by reason of the contract, to an undivided one-ninety-sixth part of the proceeds of the sale of the lots. So long as there was a choice of lots which could be sold at auction to the members, each member would receive his *pro rata* share of any sum arising from such sales of such choice lots. No auction was to take place until the whole ninety-six shares had been sold, and when that was accomplished the shareholders would clearly be tenants in common under this contract. So long as there was a choice the sales were to be made and the proceeds of the sale divided. When there was no longer any choice there could be no difference in value. If there was a difference in value there would be a choice, and no distribution by chance was to take place so long as there was a choice, and hence lots to be distributed were of equal value and a partition was thus to be made.

We hold the contract in question was not a gambling contract within the meaning of the statute, and the court erred in sustaining the objection to the offered evidence.

The judgments of the Appellate Court for the First District and of the circuit court of Cook county are each reversed and the cause is remanded.

*Reversed and remanded.*