## THE COLLINS ICE CREAM COMPANY

### *v.*

### RICHARD H. STEPHENS.

*Opinion filed February 20, 1901.*

1. PRACTICE—*objections to instructions may be made on motion for new trial.* Under section 53 of the Practice act, objections to instructions may be made on the motion for new trial, and exceptions may be entered any time before final judgment.

2. CONTRACTS—*when a contract contemplating Sunday work is valid.* A contract for Sunday work not tending to disturb the peace or constituting a violation of the Criminal Code is enforceable.

3. SAME—*whether contract for entire time contemplates Sunday labor.* A contract by which an employee agrees to devote his entire time to his employer's business, is presumed to have been made with reference to the custom in that business regarding Sunday labor.

4. SAME—*what will terminate executory contract.* If one party to an executory contract induces the other to believe he has withdrawn from the contract the latter may act on such declaration without waiting for the day of performance.

5. SAME—*arrangement to terminate contract may be waived.* If an employment contract is terminated by the employee's declaration that he will quit "right there," to which his employer assents, neither party can alone withdraw from the arrangement; but the contract will remain in force if the employee continues to work under the contract with the consent of his employer.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. S. C. STOUGH, Judge, presiding.

KNIGHT & BROWN, for appellant.

MOSES, ROSENTHAL & KENNEDY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

By a written agreement appellant employed appellee in its business of making and selling ice cream in the city of Chicago, as a solicitor and general outside man and as superintendent of its factory, under the direction

and control of J. D. Collins, its president, from March 12, 1895, to November 1, 1896, and he agreed to give his entire time and attention to said business in said capacity. Appellant agreed to pay him $50 per month, and at the end of the term $1525 additional for his services. He entered upon the employment and worked until Sunday, May 3, 1896, when there was a difficulty between him and J. D. Collins, the president. Either on that day or the following Wednesday he quit the service. He obtained other work to the amount of his monthly wages, and after the expiration of the term of service provided for in the contract he brought this suit to recover the amount stipulated to be paid at the end of the contract, alleging a wrongful discharge by appellant. He recovered a judgment in the superior court of Cook county for $1525 and interest, and the Appellate Court affirmed the judgment.

The errors assigned and argued consist in the giving of the first and second instructions to the jury at the request of plaintiff, who, as appellee, insists that they can not be considered because an exception to giving them was not properly taken. The bill of exceptions recites the giving of the instructions asked by the plaintiff, and, following them, shows an exception by the defendant at the time. When the bill of exceptions was settled, appellee procured the judge to certify that the exception was not taken, as recited, at the time the instructions were given, but was taken and preserved before final judgment, on the motion for a new trial and the argument thereof. Section 53 of the Practice act provides that exceptions to the giving or refusing any instructions may be entered at any time before the entry of final judgment in the case. Since the enactment of that provision it has not been the custom to take exception in open court at the time instructions are given or refused, but the practice has been to present objections on the motion for a new trial and to enter the exceptions before final judgment. This practice is justified by what was said by the

court in *England* v. *Vandermark*, 147 Ill. 76. The entry of exceptions before the court enters judgment gives the court full opportunity to pass upon the objections and to reconsider the instructions before such final judgment. We do not think that the statute introduces any element of chance or uncertainty, as counsel allege, or that the disastrous consequences predicted will result from its observance. Parties have no opportunity to object to instructions before they are read to the jury, and are not heard upon any objection. Instructions are given by the court, and the instructions asked on the other side are first heard by a party when read, and all he can do is to except. He does not, as alleged by counsel, speculate on the chance of a verdict by permitting instructions to be read without objection, since he could not present either objection or argument at the time. At any rate, it is within the power of the legislature to regulate the practice in that respect.

It was proved at the trial that the defendant, the Collins Ice Cream Company, had an office and factory on North Clinton street, in Chicago. The principal part of plaintiff's business was to solicit orders for ice cream and look after the trade. He also had oversight of the horses and men and had a desk in the office of the factory, and would open the mail when he was the first one at the office in the morning. The defendant intended to establish another and main office on West VanBuren street, and on Sunday, May 3, 1896, Mr. Collins, the president, together with plaintiff and some other employees, was in the old office when Collins told another employee, Mr. Hahn, that he wanted him to keep the report, list of routes, etc., at the new office, and that he would get Hahn a new desk for that purpose. Plaintiff wanted to go to the new office, and said he was going to have a desk there too. Collins said he could not have a desk in the new office. At this point the parties disagree as to what occurred. Plaintiff's testimony was that Collins

told him he wanted him to be on the outside of the business after the new place was finished and to work outside as a salesman; that he insisted Collins' proposition was not according to the contract, and that question was to be left to the attorneys for defendant; that he came down the next day to the office and worked the same as he had previously done; that he went through the same routine of work on Tuesday morning, and they were to go over in the afternoon to the office of defendant's attorneys and his attorney was to come there, but he and Collins went to a justice's suit, where he was a witness for defendant; that on Wednesday morning they went to the office of defendant's attorneys, where his attorney came, and Collins then wanted him to agree to leave the $1525 with defendant as security that he would not go into the ice cream business for a year, but that he declined to do so, and defendant refused to allow him to continue his work. The evidence on the part of the defendant tended to prove that when Collins told plaintiff he could not have a desk in the new office, he said that he wanted plaintiff to take care of things there at that office, and that he must stay there at that desk, as he had before; that plaintiff said if he was not going to have a desk at the new office he would quit right there, and Collins said, "All right;" that plaintiff then closed the book he was writing in and got up from his desk and left; that he came to the office for a few days and got his mail but did not work for the company again; that on Tuesday following, Collins told plaintiff that he wanted him to stay with the company and they would go to the company's lawyers and see if they could not fix the matter up and keep him with them; that they went there afterward, and he proposed to plaintiff to make a new contract, saying that the other was ended, and that he offered to give plaintiff the $1525 if he worked in good faith and did not do any harm to defendant for one year, but if he did he should forfeit the amount, and his proposition was refused.

The first instruction which is complained of is as follows:

"The court instructs the jury that under the contract in evidence it was not the duty of the plaintiff to labor or work for the defendant corporation on Sundays, and although it may appear from the evidence that the plaintiff and the president of the company had some difference of opinion on Sunday regarding the future work of the plaintiff in the business of the defendant, and although the plaintiff, as claimed by the defendant, stated that if he could not have a desk at the new office he (the plaintiff) would stop right there and close the said contract, and that the president of the defendant company replied thereto, 'All right,' this would not, in law, end the plaintiff's employment, if on the following Monday morning, and thereafter, the plaintiff was willing to and did work for the defendant company, under his contract, with the knowledge and consent of the defendant, and if thereafter the defendant wrongfully discharged the plaintiff, the plaintiff is entitled to a verdict for the amount of $1525, with interest thereon at the rate of five per cent from November 1, 1896."

It is not entirely clear from a reading of the instruction what was intended to be stated as a rule of law applicable to the case. As we understand the argument of counsel in explanation of it, they claim the plaintiff was not bound, as a matter of law, to work on Sundays, and therefore his statement that he would stop right there and close the contract, and the reply, "All right," by the president of the company, referred to matters to be settled in the future and work to begin on Monday, and that the law would allow to plaintiff a *locus penitentiœ* on Monday morning, when he would be bound to begin work. We cannot adopt that view of the occurrence or of the law, for various reasons. In the first place, it rests upon the proposition that plaintiff was not bound by his contract to work on Sundays. By the contract plaintiff

agreed to devote his entire time and attention to the business of defendant, and the contract is presumed to have been made with reference to the usual custom of that kind of business.   Whether he would be bound to work on Sunday would depend upon the manner of conducting the business and the established custom.   A contract which contemplates labor on Sunday not tending to disturb the peace and good order of society nor constituting a violation of the Criminal Code is valid and enforceable. (*Richmond* v. *Moore*, 107 Ill. 429; *Eden* v. *People*, 161 id. 296.) So far as there was any evidence before the court of the manner in which defendant's business was carried on, it indicated that the business was conducted on Sunday and that he was required to work on that day.   The office was open; Mr. Hahn, an employee, was writing at his desk; Mr. Donaldson, another employee, was busy at the cashier's desk; plaintiff was at his desk, and Mr. Collins, the president, was there.   In that state of the evidence the instruction was wrong in its construction of the contract.   In the next place, it is not the rule that if a party is bound by a contract to perform an act in the future and declares that he will not perform it, the other party must wait until the time for doing the act to see whether the declaration will be withdrawn.   This court has followed the rule in the leading case of *Hochster* v. *DeLaTour*, 20 Eng. L. & Eq. 157, that if one party to an executory contract induces the other to believe that he has withdrawn from the contract, the other party need not wait until the day of performance, but may act on such declaration.   (*Fox* v. *Kitton*, 19 Ill. 519; *Chamber of Commerce* v. *Sollitt*, 43 id. 519; *Follansbee* v. *Adams*, 86 id. 13.)   Here, too, the conversation did not amount to a mere threat of plaintiff that he would not work, but the supposed rule, as stated in the instruction, is based on the fact that the plaintiff said he would stop right there and close the contract, and the president of the defendant replied, "All right."   A contract may be annulled by mutual

agreement of the parties to that effect, and the conversation stated would amount to such annulment. There would be no power in one of the parties to withdraw from the arrangement after it was made and the contract terminated. The instruction, however, goes on to state, as a condition of continuance of the contract, the further fact that the plaintiff, on Monday and thereafter, worked for the defendant under the contract, with the knowledge and consent of the defendant. This is the only fact required to continue the plaintiff's employment under the contract. If the jury found, from the evidence, that plaintiff continued to work, that the work was performed under the contract, and that it was so performed with the knowledge and consent of the defendant, the only inference permissible would be that the parties had concluded to overlook the altercation and annulment of the contract on Sunday and to go on with its performance as a binding agreement. There is no proper connection between the supposed rule of law that the plaintiff was not bound to work on Sunday and the conclusion of the instruction, and we do not think, upon a consideration of all the instructions, that the error is of such a nature as to warrant a reversal.

The seventh instruction given at the request of defendant relates to the same subject of the termination of the employment, and is as follows:

"The court further instructs the jury, that even though you may believe, from the evidence, that the plaintiff continued to perform some services for the defendant after May 3, 1896, yet if you believe, from the evidence, that the contract of employment was terminated on May 3, 1896, and that such services were thereafter performed by the plaintiff without the knowledge or consent of the defendant, then the rendition of such services will not renew the contract so terminated on May 3, 1896."

Taking these instructions together, they fairly presented to the jury the question whether the parties con-

cluded to ignore what was said and done on Sunday and go on with the contract. We do not think the jury would understand from the instruction that the parties could not annul the contract on Sunday if it was not renewed by their subsequent conduct.

It is also objected to the first instruction that it is argumentative and gives undue prominence to certain facts. It is somewhat argumentative in form, but we do not think it bad for either of those reasons.

The second instruction is subjected to verbal criticism only, and we do not think that it conveys the idea that it is absolute law, regardless of all other instructions, as counsel contend.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*