(No. 33582.—

ALFONS A. BONDE *et al.*, Appellees, *vs.* HAZEL R. WEBER, Appellant.

*Opinion filed September 23, 1955.*

CRAIG O. LARSON, of Chicago, for appellant.

HERLDON H. BOWEN, of Chicago, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Hazel R. Weber, defendant, appeals from a decree of the superior court of Cook County for specific performance of a contract to purchase real estate growing out of an option contained in a lease. The decree also granted injunctive and other relief. Since the necessary result of the decree is that appellees gain and appellant loses a freehold estate, the cause is properly here on direct appeal. *Rose* v. *Dolejs,* 1 Ill. 2d 280; *Rawlins* v. *Bogusiewicz,* 397 Ill. 548.

The plaintiffs, Alfons A. Bonde, Elling H. Runden, Jr., Charles W. Jensen, Milton D. Thompson, Charles M. Gabler, William R. Fullen, Alfons A. Bonde, Jr., and James R. Bonde, co-partners doing business under the name and style of Accurate Spring Manufacturing Company, and Frank D. Weber, individually, by their complaint in equity filed in the superior court on April 8, 1953, against the defendant, allege that in 1938 Frank D. Weber, then the husband of the defendant, purchased a factory site and building located at 3811-23 West Lake Street in the city of Chicago for which he paid $28,000, taking title in

his name individually; that thereafter Weber improved the building at a cost of $15,000 making his total cost $43,000, and rented it to Accurate Spring Manufacturing Company, an Illinois corporation, of which he was the principal stockholder, at an annual rental of $3000; that on March 10, 1945, Frank D. Weber conveyed the property to the defendant, and on the same date the defendant delivered to the corporation a written instrument containing a ten-year lease on the premises expiring on March 9, 1955, with an option to purchase for an agreed consideration of $43,000 in cash provided that on or before February 1, 1955, it notified the defendant in writing that it would accept and exercise the option.

The complaint further alleges that on August 21, 1946, the corporation, by Alfons A. Bonde, its vice-president, notified the defendant, in writing, that it would accept and exercise the option; that on February 10, 1947, Frank D. Weber entered into an agreement with Alfons A. Bonde, Michael Ruman, Elling H. Runden, Jr., Charles W. Jensen, Milton D. Thompson and William R. Fullen, which recited the sale of 26,800 shares of the corporate stock by Weber to the others and by which they agreed to cause the corporation to complete the purchase of the property under the option and immediately thereafter give Weber an option to purchase it at the same price paid by the corporation, but reserving an option to the corporation to lease after March 10, 1955.

The complaint then alleges that on March 3, 1947, the plant was completely destroyed by fire; that the sum of $55,000, being the proceeds from the fire insurance policies carried on the building, was paid to the defendant, who in turn, paid it over to the contractor as rebuilding progressed; that the cost of rebuilding was over $90,000; that the additional amount above the amount of the insurance was paid by the corporation at its own expense with the knowledge and consent of the defendant to insure a better, more

fire resistant building; that the corporation expended its own funds relying upon the promise of the defendant to sell according to the option and the notice of acceptance already given; that on December 1, 1947, Alfons A. Bonde, Charles W. Jensen, Milton D. Thompson, Elling H. Runden, Jr., William R. Fullen and Michael Ruman formed a co-partnership by written agreement to engage in the business under the firm name of Accurate Spring Manufacturing Company following which the corporation was dissolved on December 31, 1947, and the assets delivered to the partners, who were also the shareholders of the corporation, as a liquidating dividend.

The complaint also alleges that contemporaneously with the change in the form of the business on December 31, 1947, an agreement in writing was made to which the corporation, the partners, Frank D. Weber, and the defendant were parties; that by this agreement the corporation assigned all its rights under the lease to the partnership, and the partnership assumed all obligations under the lease; that Frank D. Weber guaranteed payment of all rent under the lease and the defendant consented to the assignment; that on the same date as the aforesaid agreement the partners entered into an agreement in writing with Frank D. Weber by which they agreed to complete purchase under the lease and give Weber an option to buy at the price stipulated in the lease subject to their right of further occupancy.

The complaint then states that on or about August 23, 1948, one of the co-partners, Michael Ruman, was expelled from the co-partnership and Charles M. Gabler was substituted in his place; that the partnership continued to do business as before and the tenancy established was continued, all of which was known to defendant; that defendant, knowing of the change, continued to accept the monthly payments of rent under the lease; that she had cashed all rent checks except those for January, February and March

of 1953, which had been returned uncashed; that the partnership had performed all of the conditions and covenants under the lease and stood ready to pay the entire balance of rent reserved under the lease and the full purchase price of $43,000.

The complaint then charges that the defendant entered upon a plan or scheme to destroy and render ineffective the rights and interests of the partners by virtue of the lease under which Frank D. Weber was and is the ultimate party to benefit; that by way of carrying out her plan or scheme, defendant caused her son-in-law, an attorney, to write certain letters to Frank D. Weber by which it was proposed that he cooperate in securing an increased rental from the partners under threat of cancellation of the lease for breach of its terms because of an alleged assignment due to the change of personnel in the partnership; that Frank D. Weber refused to join in the plan, whereupon the defendant served the partners with a notice to quit as well as a demand for possession and brought forcible entry and detainer proceedings in the circuit court of Cook County against them; that the acts and doings of the defendant were fraudulent and designed to further her dishonest scheme. The complaint recites a tender into court of the purchase price and all remaining sums due under the lease and prays for an injunction restraining defendant from the prosecution of her forcible entry and detainer proceeding, for specific performance of the contract to purchase and for incidental relief.

The answer of the defendant admits the existence of the lease and the receipt of the notice from the corporation dated August 21, 1946, but denies its purported effect and states that it did not constitute an exercise of the option. The answer further states that the corporation expended money in rebuilding after the fire, to induce the defendant to consent to rebuild; that the consent to the assignment executed by her was expressly conditioned by a provision

that there be no further assignment; that the change in the partnership occasioned by the retirement of Ruman and the addition of Gabler was unknown to defendant and that she did not consent thereto; that upon learning the facts, she elected to terminate the lease. The answer admits that the letters were written to Frank D. Weber by defendant's attorney, as alleged in the complaint, but denies that their purpose was to carry out a plan or scheme, or that the proceedings to terminate the lease and gain possession are in furtherance of any scheme. The affirmative portion of the answer states that the notice of August 21, 1946, does not constitute an acceptance of defendant's offer to sell or an exercise of the option because it states an intention to exercise the option at a future time; that by its terms the offer in the lease cannot be accepted prior to March 9, 1955; that none of the plaintiffs had ever notified the defendant they will accept and exercise the option on March 9, 1955, and that conveyance could not be compelled in any event until that date.

On April 10, 1953, the trial court entered a temporary order restraining defendant from prosecuting her forcible entry and detainer action. Defendant's motion to dissolve the injunction was overruled on June 26, 1953, and after defendant had answered, the cause was referred to a master in chancery to take proof and report his findings. The master found that the option was accepted and exercised on August 21, 1946, by the lessee corporation, resulting in a valid contract for the purchase and sale of the property that vested equitable title in the corporation; that this contract was assigned to the co-partnership; that the serving of the notices of termination followed by the bringing of the forcible entry and detainer action constituted a plan to cheat and defraud plaintiffs and render ineffective their rights and interests in the property and constituted an anticipatory breach of the contract of purchase and sale entitling plaintiffs to specific performance at that time. The

master further recommended that the injunction should be made permanent, and that proof be taken after arguments before the court on the allowance of attorney's fees to which he found plaintiffs entitled. The decree of the court was in accordance with the findings and recommendations of the master except that the decree orders that conveyance be made on March 9, 1955, rather than prior to that time and ordered that plaintiffs keep their tender good until that date, and found that plaintiffs were not entitled to an allowance of attorney's fees, and conveyance was ordered to be made by the defendant to Frank D. Weber to avoid circuity of action.

The principal questions presented by this appeal are: (1) Did the corporation exercise the option contained in the lease resulting in a binding contract of purchase and sale between the corporation and the defendant? (2) Did the assignment agreement transfer the rights of the corporation in the contract to the partnership? (3) Did the subsequent withdrawal of one partner and the substitution of another operate to destroy the rights of the partners under the instrument? (4) Did the conduct of the defendant amount to an anticipatory breach of the contract of sale, entitling the plaintiffs to maintain their action for specific performance at the time it was filed? (5) Did the plaintiffs, under proof of tender as shown in the record, prematurely bring suit for specific performance? (6) Are the plaintiffs entitled to an allowance of attorney's fees?

The lease between the defendant and the corporation dated March 10, 1945, is for a term from March 10, 1945, to March 9, 1955, at a total rental of $90,000 payable in monthly installments of $750 each. The lease grants to the lessee "an option to purchase the demised premises, including the land forming a part thereof, on March 9, 1955, for Forty-three Thousand Dollars ($43,000.00) in cash, provided Lessee on or before February 1, 1955, notifies Lessor in writing, that it will accept and exercise said

option." The undisputed evidence shows that on August 21, 1946, a letter was mailed by the corporation to the defendant which read as follows:

> "August 21, 1946
>
> Mrs. Hazel R. Weber,
> 423 Maple Avenue,
> Wilmette, Illinois
>
> Dear Mrs. Weber:     Re: 3811 West Lake Street
>
> Our current lease on these premises now occupied by us provides that we shall have an option to buy the property at a stipulated price of $43,000.00 upon our giving you written notice of our intention to do so.
>
> Please accept this as our formal notice that we intend to accept and exercise our said option at that time.
>
> Kindly sign the receipt of this notice on the copy of this letter which is herewith enclosed and return it to us, and greatly oblige.
>
> > Very truly yours,
> > Accurate Spring Mfg. Co.
> > By: (Sgd) A. A. Bonde
> > > Vice-President
>
> A.A.B.:h
> Enc."

The letter and a copy for receipt were received by the defendant. She then took the letter and copy to her attorney, and, after discussing the matter with him, returned the copy to the corporation with the following endorsement at the bottom:

> "Receipt of above notice is
> acknowledged this 22nd
> day of August, 1946.
> > (Sgd) Hazel R. Weber."

Defendant contends that there has been no exercise of the option because the words used in the notice "we intend to exercise our said option" are not the notice required by the terms of the option and the words "at that time" are uncertain and lack mutuality; that the option can be accepted and exercised only on March 9, 1955, and plain-

tiffs must notify defendant on or before February 1, 1955, that they will accept and exercise the option on March 9, 1955; that none of the plaintiffs to this action have notified defendant that they will accept and exercise the option. It is plaintiffs' contention that there was a valid exercise of the option by the corporation; that the provisions in the lease relative to the option contained two elements: (1) an offer to sell which would become a contract when accepted, and (2) the completed contract to leave the offer open until February 1, 1955; that acceptance of the option in writing before February 1, 1955, was the only thing necessary to the creation of the contract of purchase and sale; that the matter of payment of the purchase price pertained to performance and not to the creation of the contract; that the option was accepted by the letter of August 21, 1946, and created a binding contract for the purchase and sale of the property; and that the plain meaning of the provisions of the option and notice must prevail and that there is nothing vague, indefinite, or uncertain in the acceptance of the option.

The option provisions in the lease before us are clear and definite. It gives the lessee corporation the right to buy the property at a fixed price within a certain time. The only requirement for the exercise of the option is the giving of written notice "on or before February 1, 1955." Though an option contract is an executed unilateral contract, the provisions of the same may become bilateral and executory at any time during the life of the contract by acceptance of the option as prescribed. (*Whitelaw* v. *Brady,* 3 Ill. 2d 583; *In re Estate of Frayser,* 401 Ill. 364.) In such contracts two elements exist, an offer to sell which does not become a contract until accepted, and a contract to leave the offer open for a specified time. (*Morris* v. *Goldthorp,* 390 Ill. 186.) The provisions in the lease in question meet all the requirements laid down by this court for a valid option agreement. (*Whitelaw* v. *Brady,* 3 Ill. 2d

583.) No question of the presence of a valuable consideration is raised and it clearly appears that time of performance and price are definite and certain.

The letter of August 21, 1946, after referring to the option in the lease reads, "Please accept this as our formal notice that we intend to accept and exercise our option at that time." Defendant contends that the notice cannot be considered as a present acceptance of the option because the language looks to the future and no time is specified. Construing, as we must, the provisions of the lease with the language of the notice, it seems clear that the words "at that time" refer to the.time of performance and payment, namely, on March 9, 1955. The intention was to presently give notice of exercise of the option and that the parties will be prepared to make payment at the specified time. Contracts will, if possible, be made operative to effect the intention of the parties, and this principle is equally applicable to contracts for deeds, leases, and leases coupled with options to purchase. (*In re Estate of Frayser,* 401 Ill. 364.) A contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable rules of equity, to ascertain what the parties have agreed to do. (*Welsh* v. *Jakstas,* 401 Ill. 288.) Applying these rules to the facts presented, it is our conclusion that the notice of August 21, 1946, was a valid exercise of the option and that thereafter a mutually binding contract for the purchase and sale of the property existed between the corporation and the defendant which was executory in its nature. Thereafter, under familiar equitable principles, the corporation was, in equity, the owner of the land. The vendee in such cases is to be considered as trustee of the purchase money for the vendor, who is regarded as trustee of the land for the vendee. *Smith* v. *Smith,* 340 Ill. 34; *Lombard* v. *Chicago Sinai Congregation,* 64 Ill. 477.

Our conclusion that the notice of August 21, 1946, constituted a valid exercise of the option and fulfilled the requirements of the contract in that regard is strengthened by the fact that the parties, by their later conduct, treated it as such. When negotiations for rebuilding were in progress after the fire, defendant was present with her attorney. The attorney who represented the corporation in these negotiations testified, without contradiction, that at this time it was explained to the defendant that the corporation, having heretofore exercised the option to purchase, was willing to put extra money into the building since such expenditure was for its benefit, and, ultimately, Weber's, as owners of the building. This witness further testified that the defendant expressed her approval of the plans and signed her name to the deposit agreement after determining that she did not have to pay more than the $55,000 received from insurance. At the time the assignment agreement and other attendant instruments, dated December 31, 1947, were executed, defendant was present with her attorney. The attorney who represented the corporation and partners testified that the entire plan and content of these instruments was then explained to defendant; that in connection with the drafting of such instruments, the question of the acceptance of the option contained in the lease arose and was discussed, and approved by Mrs. Weber, when she signed her name to the assignment agreement, consenting thereto. These facts, together with the testimony of defendant taken on adverse examination at the trial, lead to the conclusion that the parties treated the option as exercised and accepted the fact that the property was to be conveyed to the corporation at the proper time on the payment of the purchase price, or, upon the execution of the assignment agreement, to the partnership.

The argument advanced by defendant against the contention that the assignment agreement operated to transfer the contract rights of the corporation to the partnership

is based largely on the language of the instrument and its reference to the assignment of a "lease" and "option." The use of these terms in the agreement of December 31, 1947, will not prevent the giving of effect to the intention of the parties where that is clearly indicated. It is too well established to require citation of authority that the legal effect to be given an instrument is not to be determined by the label which it bears or the technical terms its contains. Thus a "deed" may, under proper circumstances, be in legal effect a mortgage, and an "agency contract" a contract of sale. The circumstances surrounding the execution of the agreement of December 31, 1947, show that it was contemplated by all the parties that the corporation was to be dissolved and whatever assets the corporation had, contract rights or otherwise, were to be distributed to the partnership, which was composed of the same men who had been shareholders of the corporation. The agreement specifically recited that the dissolution of the corporation and distribution of its assets were in accordance with a plan submitted to defendant. The testimony is clear that it was contemplated by all the parties that the partnership should succeed to whatever right the corporation had to purchase the property. The instrument was sufficient to assign the right if the parties so intended, and the defendant knew that the partners were acting in reliance on the plan that the partnership would complete the contract of purchase. Under these circumstances a court of equity will give effect to the intention of the parties. Defendant, having been a party to the plan, will not be permitted to rely on the technical language of the instrument to defeat that intention.

Defendant contends that the agreement entered into by the partners upon the retirement of Michael Ruman from the firm operated as an assignment of his interest in the lease or contract in violation of its terms and the terms of the assignment agreement; that this assignment worked

a forfeiture of the lease with the result that defendant had the right to terminate the tenancy and sue for possession of the property. A careful examination of the agreement entered into on September 1, 1948, upon the retirement of Michael Ruman from the firm, shows that it was what it purports to be—an adjustment and settlement of the accounts of the respective partners. It does not expressly or impliedly provide for an assignment of any rights under the lease or contract. It contains covenants of mutual release but these covenants do not purport to assign any rights in real estate. Moreover, the Uniform Partnership Act in force in this State, in defining the rights of a partner in partnership property, provides that a partner has an equal right with his partners to possess specific partnership property for partnership purposes, but he has no right to possess such property for any other purpose without the consent of his partners; that a partner's right in specific partnership property is not assignable except in connection with the assignment of all the partners in the same property. (Ill. Rev. Stat. 1953, chap. 106½, par. 25(2)(a) and (b).) The act further provides that any estate in real property may be acquired in the partnership name and that title so acquired may be conveyed only in the partnership name. (Ill. Rev. Stat. 1953, chap. 106½, par. 8(3).) In view of these principles, Michael Ruman, individually, had no assignable interest in the equitable title which the partnership had acquired in the property in question. A purported assignment of his rights under the contract of purchase to a third person would not be valid without the assignent of the other partners. A purported assignment to the others would give them no more than they had in the first place—the right to demand conveyance to the partnership in its name.

The proof also shows that appellant knew of the retirement of Michael Ruman from the firm in 1948, and of the introduction of Charles M. Gabler into the partner-

ship; that thereafter she continued to accept payments of rent throughout 1949, 1950, 1951 and 1952; that after the retirement of Ruman the business was conducted as before and there was no violation whatever of the strict terms of the lease, including the provisions for maintenance and repair. Defendant testified that she suffered no injury by the withdrawal of Michael Ruman from the firm, and we believe from the record that she knew that Gabler was added thereto. Therefore, in equity and good conscience, she cannot be permitted to claim that Ruman's retirement worked a forfeiture of the vested contract rights of the partnership.

It is also the position of defendant that plaintiffs were not entitled to a decree of specific performance because their action was prematurely brought as time for performance under the contract had not arrived and no tender as required by the contract was made prior to the filing of the complaint. The testimony at the trial and the documentary evidence in the form of letters shows that in 1952 the defendant had become dissatisfied with the amount of rent she was getting under the lease. She consulted with her son-in-law, an attorney, who, on her behalf, sought to compel the partnership to pay more rent and negotiate a new lease under threat of termination of the lease because of an alleged violation of its terms against assignment. With the knowledge and consent of defendant, three letters were written by her counsel to Frank D. Weber, outlining the plan and seeking his cooperation with the suggestion that defendant might be willing to convey an interest in the property to her former husband, conditioned on his being willing to leave it to his children by will. Weber's replies to these letters indicate that he was greatly disturbed at the suggestions made that his former business associates had violated the terms of the lease and that he was at a loss to understand how defendant had been injured in any way. Weber suggested that his son-in-law consult with

the attorney who had always represented the partnership, and personally refused to approach the partners. In his letter of January 22, 1953, to defendant's attorney, Weber advises a strict "hands off" policy toward the company. It is noteworthy that defendant's counsel had asked Weber to keep secret the contents of these letters and not reveal their contents to any of the partners. However, Weber referred the whole matter to the attorney who had always represented the business. Defendant's attorney never followed the suggestion of consultation with the attorney for the partners. Instead he prepared a notice to quit which was signed by defendant and served on the partnership on March 17, 1953, followed by a demand for possession dated March 25, 1953. The forcible entry and detainer suit was filed against the partners in circuit court on March 28, 1953.

The conduct of defendant as above related shows a clear repudiation of the contract of purchase and sale. Indeed, it is consistent only with the denial of the existence of such a contract. Under those circumstances plaintiffs were not required to wait until March 9, 1955, before filing their suit for specific performance. A contract arising out of an option for the purchase of real estate is specfically enforceable in equity. (*Macy* v. *Brown,* 326 Ill. 556; *Keogh* v. *Peck,* 316 Ill. 318.) In such cases specific performance is the only adequate remedy. Where one party to a contract repudiates it prior to the time of performance, the other party may act on that repudiation and bring an action to enforce its terms notwithstanding the fact that time of performance under the terms of the contract is in the future. (*Chicago Title and Trust Co.* v. *Sagola Lumber Co.* 242 Ill. 468; *Collins Ice Cream Co.* v. *Stephens,* 189 Ill. 200; *Fox* v. *Kitton,* 19 Ill. 519.) Under the circumstances presented here, plaintiffs were not required to rely on their contract as a defense to the forcible entry and detainer action, in which only the right of pos-

session was involved, but were entitled to pursue their remedy in a court of equity where complete justice between the parties could be done. The decree entered provided that defendant make conveyance of the real estate in question on March 9, 1955, the date specified in the contract, and not before, and then only upon full payment of the purchase price and all sums due as rent.

Though no tender was made prior to the filing of the complaint, plaintiffs, in paragraph 23 of their complaint, tender the entire amount due as rental and the entire purchase price. The answer does not deny this tender but alleges only that plaintiffs did not make tender prior to the filing of their complaint. The testimony shows that during the course of the trial, plaintiffs tendered in cash to defendant the full purchase price and all sums due for rent in return for a deed, but that she refused the tender then made. When a party to a contract for the sale of real estate has openly refused to perform his part of the agreement, or has manifested an intention not to perform in any event, an actual tender by the plaintiffs, before suit for specific performance is brought, is unnecessary. It is sufficient if tender is made in the pleadings and it is shown that plaintiff is then ready, willing and able to perform his part of the agreement. (*Moehling* v. *Pierce*, 3 Ill. 2d 418; *Neidhardt* v. *Frank*, 325 Ill. 596; *Mishelsky* v. *Carman*, 320 Ill. 123.) In any event, the tender made in this case during the course of the trial was sufficient. (*Maehling* v. *Pierce*, 3 Ill. 2d 418.) No question was raised as to the amount of tender made during the trial and it appears that it was adequate to fully pay all money due the defendant.

The master to whom the cause was referred found that the plaintiffs were not in default by reason of any of the acts alleged in the notice to quit or in the allegations contained in the complaint in forcible entry and detainer; that the charges and allegations were made without reasonable cause and not in good faith and were untrue and that

plaintiffs are entitled to recover from defendant all of their reasonable expenses, including court costs, court reporter's, attorney's, and master's fees to be taxed by the court as costs against defendant. The decree appealed from deleted the word "attorney's." We think the chancellor acted properly in refusing to allow attorney fees.

The decree of the superior court of Cook County is affirmed.

*Decree affirmed.*