(No. 36656.—

H. M. R., INC., Appellant, *vs.* JOHN BOECKENHAUER *et al.,* Appellees.

*Opinion filed January 23, 1962.*

GEORGE J. ANOS and DANIEL A. COSTIGAN, of Chicago, (JOSEPH ASH, of counsel,) for appellant.

EDWARD C. HOFERT and OWEN N. PRICE, of Chicago, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal prosecuted by the plaintiff corporation, H. M. R., Inc., to review a decree of the circuit court of Cook County dismissing plaintiff's amended complaint for specific performance of a real-estate contract allegedly entered into with the defendants, John Boeckenhauer and Esther Boeckenhauer. A freehold is involved. *Lang* v. *Parks,* 19 Ill.2d 223.

The subject property, a 40-acre tract situated adjacent to the city of Des Plaines, was owned by defendants and used by them for truck farming and as a place of residence. On April 26, 1955, they executed and delivered to William Alter, a licensed real-estate broker, an exclusive 30-day

listing contract whereby they agreed to sell their real estate for $5,000 per acre and to pay the usual sales commission thereon. The contract also granted Alter "the privilege of purchasing this property during said period, if you so desire." No sale having occurred, on May 27, 1955, the defendants, for a consideration of $25, again signed and delivered to Alter a similar 30-day contract containing such option provision, and on the reverse side thereof defendants also agreed, if paid $25 each succeeding month, to extend the option for a maximum period of nine months. By letter dated August 19, 1955, the option was extended an additional ten months for a total consideration of $250, and all amounts due defendants as option money were subsequently paid. One month prior to December 27, 1956, being the termination date for the option as extended, defendants notified Alter in writing that no further extensions would be granted, and on December 17, 1956, Alter assigned such option to one Leo Dali, who in turn wrote to defendants on December 19, 1956, notifying them of the assignment and stating "I do hereby elect to exercise the option to acquire the property legally described as * * * at a price of Five Thousand Dollars ($5,000.00) per acre. Would you kindly arrange to communicate with me so that we may work out the mechanics of closing out the transaction. I would appreciate hearing from you at your convenience."

It appears that immediately thereafter John Boeckenhauer called the telephone number given in the Dali letter but was informed by the woman answering that no one by the name of Dali was there, whereupon Boeckenhauer instructed her to ask Dali, should he appear, to call defendants' attorney. A few days later, being December 28, 1956, Boeckenhauer contacted his attorney and was advised there had been no word from Dali.

Nothing further occurred until February 11, 1957, at which time defendants received a letter dated the week previous from Dali's lawyer requesting the name of Bocken-

hauer's attorney "so that we may communicate with him to set up the mechanics of closing." Thereafter prolonged negotiations took place between counsel concerning the terms of sale. Norman Rosen, Dali's attorney, testified that Boeckenhauer refused to close pursuant to the option terms but instead demanded a higher purchase price, a lease of the property so as to harvest his tomato crop, and an additional lease of a part of the tract for his son. On April 30, 1957, Rosen advised Bockenhauer that Dali would not increase the purchase price but would be willing to lease the property to him for the remainder of the crop year at a reasonable rental. Negotiations continued between the attorneys concerning a proposed sales contract without agreement and, on August 9, 1957, defendants were informed that legal proceedings would be instituted unless they were willing to consummate the transaction "under the original terms."

On March 8, 1958, Dali assigned his interest in the real estate option to plaintiff, a corporation whose stock was owned entirely by a member of the law firm which had earlier represented Dali in this matter, and on May 9, 1958, the specific performance action was filed. During the subsequent proceedings before the master in chancery, plaintiff tendered a cashier's check for $200,000, being the purchase price specified by the option, but it was refused, and at the close of plaintiff's evidence the master recommended the dismissal of the suit. From a decree based upon such recommendation, direct appeal has been prosecuted to this court.

The sole question presented is whether plaintiff has made a *prima facie* case entitling it to specific performance. Although an option is initially unilateral in nature, upon its timely acceptance the enforcement thereof becomes subject to the same rules as bilateral contracts, (*Bonde* v. *Weber*, 6 Ill.2d 365,) and it is necessary for one seeking specific performance to show either that he has performed his part of the agreement or has been excused from performance by the acts of the other party. (*Carver* v. *VanArsdale*, 312 Ill.

220; *Bothwell* v. *Schimdt*, 248 Ill. 586; *Kingsley* v. *Roeder*, 2 Ill.2d 131; *Brown* v. *Jurczak*, 397 Ill. 532.) Even though an option may by its terms be exercised without the instant tender of consideration, such tender must occur within a reasonable time thereafter unless otherwise excused. *Northern Illinois Coal Corp.* v. *Cryder*, 361 Ill. 274; *Boardman* v. *Bubert*, 325 Ill. 38; 33 I.L.P., Specific Performance, sec. 77.

The option itself did not require the tender of consideration at the time of its acceptance, and if Dali's letter of December 19, 1956, is to be considered as an exercise of the option, then he was required to make such a tender within a reasonable time thereafter unless excused by defendants' acts. However, it appears neither that such tender was made nor that Dali or plaintiff were ever in a position to make such a tender. Dali did not appear or testify in these proceedings; he did not talk to or attend any meetings with defendants or their attorney; Norman Rosen, Dali's own attorney, had never seen him in person nor knew what he looked like; William Alter, who had in the past shared office space with Dali, did not know where Dali lived during that time, where he banked, or whether he had any real estate or other assets; and neither Alter nor plaintiff knew of Dali's whereabouts at the time of hearing before the master in chancery. Under such a record it cannot be said that Dali's ability to perform has been shown.

Not only did plaintiff fail to acquire an interest in the option until more than fourteen months after the end of the option period, but until the tender was made during the master's hearings on June 7, 1960, the undisputed evidence shows plaintiff had made no tender, had no bank accounts, had assets of only $1,000, and had no ability to borrow the necessary funds upon its own credit. What constitutes a reasonable period of time for tender depends upon the facts of each individual case, but we have held that delays of two months (*Boardman* v. *Bubert*, 325 Ill. 38,) four

months (*Crandall* v. *Willig,* 166 Ill. 233,) five months (*Mix* v. *Balduc,* 78 Ill. 215,) and fifteen months (*Kellogg* v. *Kartte,* 323 Ill. 443,) may under particular circumstances be unreasonable. It is clear that seasonable performance did not occur in the present case and that plaintiff is precluded from equitable relief unless such performance was excused by defendants' acts.

Tender may be excused where the vendor has repudiated the contract (*Bonde* v. *Weber,* 6 Ill.2d 365; *Moehling* v. *Pierce,* 3 Ill.2d 418,) refused to furnish an abstract of title (*Mishelsky* v. *Carman,* 320 Ill. 123,) or has waived payment by other acts. (*Welsh* v. *Jakstas,* 401 Ill. 288.) But none of these circumstances existed in this case. Immediately upon being informed of the exercise of the option, Boeckenhauer telephoned what was supposedly Dali's number and, upon being advised that no one by that name was there, left a message for Dali should he appear. A few days later Boeckenhauer contacted his attorney to see if Dali had called and thereafter delivered the tract's title guaranty policy to counsel. The vendee was the party attempting to exercise the option and it was for such vendee to see that the necessary closing arrangements were made. The vendors were under no duty to go to extreme lengths in trying to locate Dali and tender him a deed. (*Crandall* v. *Willig,* 166 Ill. 233.) Although plaintiff makes much of the fact that defendants later refused to sell under the terms expressed in the option, we do not view this as a repudiation of a contract so as to excuse tender but rather an indication that the parties recognized the deficiencies of the option acceptance and were attempting to negotiate a new contract upon terms acceptable to both parties. Under the facts here presented, we believe the vendee's performance was not excused by acts of the vendor.

Specific performance is not in all cases a matter of right, but rests in the sound legal discretion of the court, and where unilataeral contracts are concerned the court

will view any delay of the purchaser with especial strictness. (*Crandall* v. *Willig,* 166 Ill. 233.) We are also reluctant to assist one who assumes no financial responsibility on a contract but seeks to hold the vendee in the hope of a resale. (*Willhite* v. *Schurtz,* 294 Ill. 309.) It was admitted that William Alter acquired the option with the intention of interesting other investors in the project, and neither Dali nor the plaintiff corporation had the resources to purchase the property had defendants insisted upon performance. Justice is not best served by enforcing a sale under these circumstances. We hold that plaintiff failed to prove a *prima facie* case entitling it to the relief requested and that the chancellor properly dismissed the complaint.

The decree of the circuit court of Cook County is therefore affirmed.

*Decree affirmed.*