(No. 36594.—)

PATRICK J. LUCEY *et al.,* Appellants, *vs.* MARY P. SHELTON
*et al.,* Appellees.

*Opinion filed March 23, 1962.—Rehearing denied May 23, 1962.*

LOUIS J. VICTOR, of Chicago, for appellants.

BEN COPPLE, of Chicago, for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the
court:

This case involves a purported option agreement for the
purchase of a parcel of improved real estate. The cause
was assigned to a master in chancery and, after extensive
proofs were heard, the master found that both the com-
plaint and the counterclaim should be dismissed for want
of equity and the plaintiffs' prayer for specific performance
of the purported option agreement denied. The master's
report made several specific findings of fact, all of which,
in appropriate proceedings before the chancellor, were up-

held by the chancellor. A freehold being involved, an appeal was brought directly to this court.

The plaintiffs, Patrick J. and Gloria Lucey, and the defendant Mary P. Shelton, with her spouse, jointly purchased a two-flat building in the village of La Grange for $15,000. Each of the two parties paid a $750 down payment. The balance of the purchase price was secured through a mortgage of $13,500 supplied by the defendant La Grange Federal Savings and Loan Association. Plaintiffs lived in the lower apartment and Mary P. Shelton and her spouse in the upper. Equal payments were made with some regularity for several years until late in the year 1956, when the Sheltons became financially distressed and were in arrears. In the meantime, the plaintiffs had left the premises but had rented their apartment to the defendants William and Mary Habada, and with this income continued to make their portion of the monthly payments on the mortgage.

The husbands of the two families met on several occasions to determine the course of action concerning the Sheltons' financial problem and plaintiffs' attorney prepared a document of some length which was to be executed by both families. On a designated night it was presented to the defendant Mary Shelton, for the first time, read by her and then signed in the presence of two witnesses, neither of whom testified.

It is the contention of the plaintiffs that this document constituted an option, given by the Sheltons to the plaintiffs, for the right to purchase their interest in the property at a designated figure within a designated time.

The essential elements of the option read as follows:

"In consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, the undersigned, convey by Warranty Deed, free and clear of all liens and incumberances [sic] to Patrick J. Lucey and Gloria Lucey, his wife, hereinafter called "Luceys," their heirs, assigns or nominees and deliver to Luceys or to their nomi-

nees, all of the interest, equity, right or title which Sheltons now have in and to the premises legally described as:

(Legal Description)

at the option of, and upon the demand of the Lucey's provided 30 days prior written notice of their intention to exercise this option is served upon the Sheltons by U.S. registered mail, addressed to Sheltons at 241 S. Catherine Avenue, La Grange, Cook County, Illinois, upon the following terms and conditions:

(a) by the payment by Luceys to Sheltons of the sum of Seven Hundred Dollars ($700.00) simultaneously with the signing hereof, at 241 S. Catherine Avenue, La Grange, Cook County, Illinois;

(b) Luceys agreeing to pay to Sheltons, the additional sum of Seventeen Hundred Twenty-seven Dollars ($1727.00);

(c) Luceys also agreeing to pay any additional sums which may be paid by Sheltons on the principal between the date hereof and December 10, 1953 [*sic*] on account of or towards their prorata share of the balance due on the purchase price of the above described premises;

(d) Luceys further agreeing to pay a sum equal to 20% of all such payments on the principal by Sheltons which 20% shall be considered as the amount of the appreciation in value of the property in question, between this date and December 10, 1963;

(e) if Luceys fail to exercise this, their option and right to purchase the equity and interest of Sheltons on or before December 10, 1963, Sheltons shall be permitted to retain the said sum of Seven Hundred Dollars ($700.00) to be paid this date, as liquidated damages, otherwise such sum of Seven Hundred Dollars ($700.00) shall be considered and applied by Sheltons as a part of the total purchase price being paid by Luceys to Sheltons for the equity, interest or right of Sheltons in and to such property.

"It is also understood and agreed, that between this date and December 10, 1963, each of the parties hereto will faithfully perform all of the requirements which they severally are now obligated to perform, and will make all payments which they are now severally obligated to make as purchases [*sic*] and/or as the owners in possession of said premises and/or for the operation and maintenance of the premises above described, and that failure on the part of Sheltons to make the payment due from them under such purchase agreement or as costs of the operation and maintenance thereof, will entitle the Luceys to make such payments in the place and instead of Sheltons, and to take credit therefore in the settlement of accounts between the parties hereto, at the time the said option is exercised by Luceys.

"All payments which Luceys make on account of or because of default on payment of the undersigned or for any other purpose or reason shall bear interest at the rate of 4½ per cent per annum.

"It is agreed by and between the respective parties hereto that the following statement of account between the parties hereto jointly as purchasers, and the grantors or sellers of the property in question to them is, as of this date as follows:

Purchase price of property.....................$15,000.00
Payment made to date on principal by Luceys...... 2,629.00
Payment to date on principal by Sheltons.......... 2,427.00
Balance due from Luceys and Sheltons, together... 9,944.00

Total . . . ..................................$15,000.00"

This document was executed by the parties on December, 29, 1956.

After the execution of the instrument there was a divorce between Mary Shelton and Howard J. Shelton, her husband, and in a property settlement between them in that cause any interest theretofore held by the husband, in this property, was in the future to be considered that of Mary Shelton.

The record discloses that on June 28, 1958, the plaintiffs forwarded to Mary Shelton a form of notice demonstrating an intention to pick up the option.

The complaint seeks specific performance of this purported option agreement on the theory that Mary Shelton was given an opportunity to perform, which she refused, and that thus plaintiffs require the equity powers of the court for the establishment of their rights in the contract. Plaintiffs in their complaint also assert that a trust deed signed by Mary P. Shelton dated April 15, 1958, was made merely to cloud the title of Mary Shelton against the claims of plaintiffs and is, therefore, null and void. Also plaintiffs contend that the court erred in not overruling the master in chancery on his finding that no notice was ever served under the option.

The defendant Mary Shelton contends that the instrument is vague and uncertain but more seriously urges that she believed the instrument to represent security for a loan of $700, the receipt of which was admitted. She sets forth in her answer facts, in substance, alleging that a con-

fidential relationship existed between the parties to this document; that she relied upon representations of Patrick J. Lucey in executing said document and was induced to sign it by false representations. Further answering, said defendant alleges that the trust deed hereinabove mentioned covered a *bona fide* loan. She further counterclaimed that because of certain work performed by her or her agents regarding trash removal, snow removal, decorating and the like, she has a right to an accounting and the eventual partition of her interest in the premises.

We do not feel that the instrument in question can be challenged for uncertainty as a matter of law. It specifically sets out the provisions of the agreement, at least with sufficient clarity so that the actual monies to be exchanged could with certainty and simplicity be determined.

We feel, however, that we must consider the atmosphere in which this document was executed in order to arrive at an opinion in this case. The record discloses that the parties herein were joint owners and that, after plaintiffs had the benefit of counsel, a document was prepared and presented to Mary Shelton for her signature. The master found that a confidential relationship between plaintiffs and said defendant was created, that said defendant relied upon the representations of Patrick J. Lucey in executing the agreement and was induced thereby to sign it, and that said representation was false. This court held, in *Favata* v. *Mercer,* 409 Ill. 271, 275; "In suits for specific performance the principles of ethics are given extensive consideration. Such relief will not be decreed unless the agreement has been entered into with perfect fairness and without misapprehension or misrepresentation. (*Cowan* v. *Curran,* 216 Ill. 598.) To prevail, the plaintiff must show that as to every part of the transaction he was free from any imputation of deceit or sharp practice. He must stand in conscientious relations toward his adversaries, and must not have obtained the agreement by unscrupulous methods, by overreaching

\* \* \* even though his conduct is not actually fraudulent." *Wrobel* v. *Wojtasiek,* 341 Ill. 330.

While under the evidence found in this record, reasonable men could arrive at different conclusions on this point, we find no compelling reason in the record to disturb the findings of the master and the decree of the chancellor.

The master had the opportunity of observing the witnesses and determining the true nature of their testimony. At one point Mary Shelton said, "I asked him what if Howard's business that he was just starting could pay off and we could get out of debt and pay him back this $700.00 we were borrowing, would it then be possible to make everything as if it had never happened. Would we—we could just erase this agreement. And he said it could be arranged. That's all I remember." On another occasion she testified, "I asked him so many questions about the option that he became jokingly irritated and he said 'Why do you ask so many questions, Mary? Don't you know we're friends? That's not important.' "

This court held on many occasions that where the master has heard the testimony of witnesses and made findings of fact based on the evidence, which findings are approved by the chancellor, this court will not disturb the decree entered in the trial court unless it is manifestly against the weight of the evidence. *Hopkins* v. *Austin State Bank,* 410 Ill. 67; *Finley* v. *Felter,* 403 Ill. 372.

As to the master's findings, adopted by the chancellor, that the junior mortgage upon the interest of Mary Shelton is valid, we observe that since specific performance was properly denied and the junior mortgage is only a lien on the interest of Mary Shelton, the validity or invalidity of the mortgage does not concern the plaintiffs. Furthermore, the master specifically found that the plaintiffs failed to show any fraud in the execution of the junior mortgage.

The argument of plaintiffs that the court erred in not overruling the master in chancery on his finding that no

notice was ever served under the option appears to be well taken upon an examination of the record. This error, however, does not compel a reversal of the trial court's decision that specific performance be denied for want of equity.

It is interesting to note the master also found that no tender in any amount of an alleged purchase price in pursuance of the exercise of the option was ever made. Although the chancellor adopted the master's report over the exceptions of the plaintiffs, the brief and argument of the plaintiffs nowhere contains any contention that the master erred in finding that no tender was ever made.

Apparently the counterclaim of Mary Shelton for partition and accounting, also rejected by the chancellor, has been abandoned, for it has not been brought to this court under appropriate cross-appeal proceedings.

The decree of the superior court of Cook County is accordingly affirmed.

*Decree affirmed.*