ANTHONY J. TANTILLO *et al.*, Plaintiffs and Counterdefendants-Appellees, *v.* EDWARD J. JANUS *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (5th Division)    No. 79-1408

Opinion filed July 25, 1980.

Wayne B. Giampietro and Ralla Klepak, both of Chicago (DeJong, Poltrock & Giampietro, of counsel), for appellants.

Zipperman, Levin & Associates, Ltd., of Chicago (Edward S. Lipsky, Adrienne Zipperman Shaps, and James G. O'Donohue, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs brought this action for specific performance of a real estate contract for the purchase of a single-family residence owned by defendants. Defendants filed a counterclaim seeking rescission of the contract and asking that title to the property be cleared of any claim by plaintiffs. Following a bench trial, the court found in favor of plaintiffs on both the complaint and counterclaim and ordered specific performance of the contract. On appeal, defendants contend that: (1) plaintiffs are not entitled to specific performance because they failed to redeem their promissory note and obtain a mortgage within the time specified in the contract; (2) plaintiffs did not establish that they were ready, willing and able to perform; and (3) specific performance is not equitable under the facts of the case. We affirm. The pertinent facts follow.

Defendants are owners of a single-family home located in Chicago. Leslie Burton, a licensed real estate broker, learned that defendants were contemplating the sale of their home and requested permission to show it to plaintiffs. After viewing the home, plaintiffs offered to buy it for $98,500. Defendants accepted and the parties signed a real estate sale contract dated June 24, 1976.

The contract provided, *inter alia*, that plaintiffs had paid $9800 (*sic*) by a promissory note which was to become a cashier's check within three days. The promissory note, in the amount of $9850, or 10 percent of the purchase price, was dated June 24, 1976, and bore a due date of June 28. The earnest money, in the form of the note and, later, the check, was to be held by Burton's real estate office. A mortgage contingency clause allowed plaintiffs to avoid the contract if they were unable to procure a $19,000 mortgage commitment within 30 days and so notified defendants in writing. Defendants, however, retained the option to keep the contract in effect if, within 30 days of receiving notice from plaintiffs, defendants either secured a mortgage commitment for plaintiffs or agreed to accept a purchase money mortgage. The contract also provided that time was of the essence of the contract.

Plaintiffs' mortgage application was approved by Peerless Federal Savings and Loan Association on August 13, 1976, and plaintiffs signed the acceptance of the terms of the loan on August 27. According to the records on file at Peerless, plaintiffs' first documented contact with them was made on August 3, 1976. Plaintiffs' mortgage application was dated August 5, although plaintiff Anthony Tantillo testified that he had contacted Peerless within a few days after signing the contract and had received a verbal mortgage commitment from them some time during July.

On September 8, 1976, Evelyn Janus, one of the defendants, asked plaintiffs to extend the closing date from September 23, 1976, to October 26, because of her health problems. Plaintiffs agreed and all five parties to the contract signed a contract modification prepared by defendants' attorney. The contract was modified two more times, each time postponing the closing date, first to November 30, 1976, then to February 28, 1977. The parties again signed contract modifications which were prepared by defendants' attorney. The last modification was made on November 22, 1976. According to Anthony Tantillo, all three extensions were made at the request of Evelyn Janus, although she testified that she asked only for the first and that Tantillo had initiated the latter two extensions.

On December 2, 1976, defendants' attorney sent a letter to Burton, their broker, informing him that he represented defendants and inquiring whether the promissory note had ever been redeemed. Plaintiffs had not yet redeemed the note as provided in the contract, and Tantillo testified that on the occasions Burton had asked him about the earnest money he had told him the cash would be there when needed and expressed his belief that the note was as good as cash. Tantillo also testified that Burton had mentioned the earnest money in late June or early July but first asked for it toward the end of November. Burton testified that he had

asked Tantillo for the earnest money several times, as early as three days after the contract was signed, and that Tantillo reassured him and told him he would get the money, although he never did. Burton further testified that he did not tell defendants that plaintiffs had not redeemed the note.

On December 6, 1976, defendants' attorney sent another letter to Burton, asking him to confirm that plaintiffs had deposited the promissory note with Burton on June 24, 1976, and that it had been redeemed. The attorney received no written response from Burton; however, the attorney testified that he had lunch with Burton on December 13 or 16 and that Burton then showed him a copy of plaintiffs' check for $9850. Defendants' attorney again wrote to Burton on December 22, once again asking Burton to inform him, in writing, of the status of the earnest money.

On January 5, 1977, defendants' attorney sent Burton a letter notifying him that defendants had elected to declare the contract null and void because of plaintiffs' failure to redeem the promissory note as provided in the contract. A copy of the letter was also sent to plaintiffs' attorney, who responded in a letter, dated January 7, which stated that plaintiffs had complied with the terms of the contract and remained ready, willing and able to perform. He also asked defendants' attorney to prepare the necessary documents and arrange the closing. In a letter to plaintiffs' attorney on January 14, defendants' attorney restated his clients' cancellation of the contract and accordingly refused to set a closing for the sale.

The trial court found that the extensions of the contract were requested by defendants, that plaintiffs had always indicated their readiness to perform, that the mortgage contingency was for plaintiffs' benefit as buyers, and that the failure to redeem the promissory note within three days was not a material breach. The court found that plaintiffs had proved the allegations of their complaint, denied relief to defendants on their counterclaim and ordered specific performance of the contract. Defendants have appealed.

OPINION

Generally, a party will be entitled to specific performance of a contract for the conveyance of real estate only upon establishing either that he has performed according to the terms of the contract or that he was ready, willing and able to perform but was prevented, and thus excused, from doing so by the acts of the other party. *H.M.R., Inc. v. Boeckenhauer* (1962), 24 Ill. 2d 65, 68, 179 N.E.2d 613, 615; *Kingsley v. Roeder* (1954), 2 Ill. 2d 131, 117 N.E.2d 82.

Defendants first contend that plaintiffs are not entitled to specific performance because they were not in compliance with the terms of the

contract. Specifically, defendants point to the contract provisions, pertaining to depositing the earnest money and procuring a mortgage, which required that plaintiffs redeem their promissory note and obtain financing within stated periods of time. Plaintiffs redeemed the note and obtained a mortgage commitment after the times specified in the contract and defendants accordingly maintain that plaintiffs' actions constituted a material breach of the contract's "time is of the essence" provision. We conclude, however, that defendants have waived their right to enforce the time-is-of-the-essence clause and that plaintiffs have performed according to the contract.

Defendants rely on *Horan v. Blowitz* (1958), 13 Ill. 2d 126, 148 N.E.2d 445, in support of their argument that the earnest money and mortgage provisions are material and that plaintiffs' failure to perform within the time specified is consequently a material breach. In *Horan*, the purchaser was to deposit $2000 earnest money and pay the balance of the purchase price at the time of conveyance. However, the purchaser deposited only $500 and refused to pay the balance of the earnest money until closing. The purchaser had also failed to obtain financing within 15 days as provided in the contract. Specific performance was nevertheless refused to the seller, the court finding that both parties were in default on the stipulated date in a contract in which time was of the essence. *Horan* differs from the instant case in one significant aspect. While demand was made for payment of the earnest money in *Horan*, here there was no actual demand made to plaintiffs for the redemption of the note.

There is no dispute that plaintiffs did not redeem their promissory note within three days of June 24, 1976, for the cashier's check tendered as payment of the earnest money is dated December 9, 1976. During the intervening months, defendants' broker Burton had mentioned the matter to plaintiff Anthony Tantillo, who responded to Burton's inquiries with reassurances that the money would be there when necessary. Tantillo did not proceed to redeem the note. Apparently, Burton neither pursued the matter with Tantillo nor relayed to defendants any information of plaintiffs' inaction in redeeming the note as provided by the contract. According to Tantillo's testimony, he and defendants' attorney had discussed the status of the earnest money before Tantillo signed the third extension of the closing date.

Although defendants maintain that they acted promptly to enforce their rights under the contract, the record discloses otherwise. The third extension is dated November 22, 1976, and it was not until December 2, 1976, that defendants took any action regarding the earnest money in the form of a letter from defendants' attorney to Burton asking him to advise them of the status of the earnest money. A copy of that letter was sent to plaintiffs' attorney. Two more letters, dated December 6, 1976, and

December 22, 1976, were sent to Burton, repeating the request of defendants' attorney for information in writing. Plaintiffs' attorney was sent a copy only of the former letter. Defendants' attorney testified that he met with Burton on December 13 or 16, at which time Burton had shown him the check for the earnest money, although the attorney added that he didn't know if the check had been deposited. Finally, on January 5, 1977, apparently having received no written response from Burton, defendants' attorney notified Burton that defendants were declaring the contract null and void. Plaintiffs' attorney was sent a copy of the letter by certified mail, with a return receipt requested.

Notwithstanding the relatively prompt initiation of correspondence after November 22, 1976, defendants did not demand performance of plaintiffs. The letters of December 2, 6 and 22 sought information from Burton and contained no demand for performance. Furthermore, the letter of December 22 was sent only to Burton with no copy forwarded to plaintiffs or their attorney. This letter was dated nearly two weeks after plaintiffs had redeemed the note and a week to 10 days after defendants' attorney had seen the check. It was not until their attorney was sent a copy of defendants' repudiation of the contract in their attorney's January 5, 1977, letter to Burton that plaintiffs were informed of defendants' dissatisfaction. By that time, however, plaintiffs had redeemed the note and could be considered in default only if the time-is-of-the-essence provision were still in effect.

Whether the time-is-of-the-essence provision has been waived is a question of fact. (*Kingsley v. Roeder* (1954), 2 Ill. 2d 131, 138, 117 N.E.2d 82, 86.) In *Kingsley*, the parties had entered into a contract for the sale of realty. The purchasers were to make monthly payments until the balance reached an amount at which the sellers had agreed to give the buyers a purchase money mortgage. The sellers' mother-in-law was designated as the agent for payment, and she repeatedly accepted tardy payments of the installments. The sellers attempted to rescind the contract due to the late payments, and the purchasers sued for specific performance, tendering in court the amount necessary to activate the purchase money mortgage provision. Finding no evidence that the sellers had made demands on the purchasers or even threatened to rescind the contract, the court concluded that the purchasers had been lulled into a false sense of security and that the time-is-of-the-essence provision had been waived.

A similar situation exists here. In order to reach the conclusion it did regarding the waiver of the time-is-of-the-essence provision, the trial court necessarily had to find that Burton was defendants' agent, not plaintiffs'. This is essentially a fact question and the record clearly establishes that Burton was defendants' agent. (See generally *Roby v.*

*Decatur Steel Erectors, Inc.* (1978), 59 Ill. App. 3d 720, 375 N.E.2d 1355; 5 Ill. L. & Prac. *Brokers* §24 (1953).) Defendants had allowed Burton to show their home to plaintiffs and defendants agreed to pay Burton's commission. The actual sales contract was negotiated at defendants' home and shows that the sale price was increased from $98,000 to $98,500, while the commission defendants agreed to pay was reduced from 5 percent of the sale price to $3000. Both the note and the subsequent check were made payable to Burton's agency and were delivered to Burton. Because of the agency relationship, Burton had a duty to disclose material information to defendants (*Neuberg v. Clute* (1955), 6 Ill. 2d 58, 62, 126 N.E.2d 648, 650), and his knowledge of the late redemption of the promissory note was properly imputed to defendants. See *Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 231, 254 N.E.2d 457, 460.

■■ Thus, from the earliest stages of the transaction either defendants or their agent Burton knew of plaintiffs' tardiness yet took no action of any kind for at least five months, when their attorney began to ask for information. The attorney discovered that the note had not been redeemed at the time Tantillo signed the third extension of the contract in late November. Nevertheless, defendants signed the extension and are therefore chargeable with the knowledge that the note had not yet been redeemed. (See *Kuska v. Folkes* (1979), 73 Ill. App. 3d 540, 544, 391 N.E.2d 1082, 1085.) As in *Kingsley*, plaintiffs here were lulled into a false sense of security by Burton's acceptance of their delays, by the absence of written demands for performance, and by the absence of any indication that defendants intended to rescind the contract until almost a month after plaintiffs had redeemed the note. We therefore find that there is sufficient evidence to support the trial court's conclusion that the time-is-of-the-essence provision was waived and that plaintiffs' failure to redeem the promissory note promptly was thus not a material breach of the contract.

■■ Similarly, we find no material breach of the contract in plaintiffs' failure to obtain a mortgage commitment within 30 days of the date of the contract. While plaintiffs did not apply for the mortgage until August 5, 1976, receiving the commitment on August 13, 1976, neither did defendants, their attorney nor Burton at any time inquire into the status of the mortgage application or in any other way indicate that they intended to enforce the time restrictions of the mortgage provision. We therefore find that defendants also waived the time-is-of-the-essence provision with regard to procuring the mortgage.

Because defendants waived their right to enforce the time-is-of-the-essence provision and because plaintiffs were thus in full compliance with the contract at the time defendants attempted to repudiate it, plaintiffs

accordingly may seek specific performance. (See *Kelly v. Germania Savings & Loan Association* (1963), 28 Ill. 2d 591, 192 N.E.2d 813; *Kingsley v. Roeder.*) Defendants contend, nevertheless, that plaintiffs have failed to establish their ability to perform the contract and thus are not entitled to specific performance. We disagree.

Defendants rely exclusively on evidence from plaintiffs' savings accounts and conclude that plaintiffs never had enough ready cash to meet the purchase price. It has been held that repudiation of a contract by the sellers entitles the buyers to sue for specific performance without tender prior to the filing of the complaint. (*Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883.) Under such circumstances, it is considered sufficient if the plaintiff is ready to perform and offers to pay (*Macy v. Brown* (1927), 326 Ill. 556, 158 N.E. 216; *McGrath v. Davis* (1966), 75 Ill. App. 2d 19, 221 N.E.2d 54), for equity does not require the performance of useless acts. See *Macy v. Brown.*

In *Rogowski v. Nelson* (1970), 126 Ill. App. 2d 452, 262 N.E.2d 174, the sellers appealed from the trial court's decree granting specific performance to the purchasers, claiming *inter alia* that there had been no tender of purchase price, either in proper form or in the correct amount. The evidence there disclosed that the sale price for the sellers' home was $34,500 and that the buyers had deposited $3400 as earnest money. The buyers obtained a mortgage commitment for $10,000 and notified the sellers of the commitment by registered mail. However, one of the sellers told a buyer that she had changed her mind and would not sell. The other seller informed his real estate agent that his wife had changed her mind and would not sell. Although there was no further evidence of a demand for performance or a tender of the purchase price by buyer, and there was no evidence of any other financial resources for the purchasers, the order of conveyance was affirmed on appeal. The court rejected the sellers' argument out of hand and, citing *Bonde v. Weber*, stated:

> "The evidence is uncontradicted that sellers first refused to perform. Such repudiation entitled the buyers to bring a suit for specific performance without tender upon allegation of readiness and willingness to perform." 126 Ill. App. 2d 452, 457, 262 N.E.2d 174, 177.

■■ As in *Rogowski*, plaintiffs here were in full compliance with the contract when it was repudiated by defendants. The necessity of tender of the full performance price was obviated by defendants' prior refusal to perform. Moreover, in addition to the evidence of the amounts available from plaintiffs' savings accounts, there is also evidence that plaintiffs would apply the proceeds of the sale of their home to the purchase of defendants' home. In light of defendants' refusal to perform, it was not

necessary for plaintiffs to liquidate their assets in order to have cash available so as to establish their right to specific performance. Furthermore, the testimony of Anthony Tantillo makes it clear that plaintiffs were ready and willing to complete performance of the contract but were prevented from doing so by defendants' actions.

Lastly, defendants contend that the decree of specific performance was inequitable because Anthony Tantillo did not disclose that he was a licensed real estate broker and because of the heart condition of Evelyn Janus, one of defendants. We find both of these arguments to be without merit.

■ Although Tantillo never disclosed his status, defendants have not shown that they were damaged by his actions. Nothing in the record indicates that Tantillo used his knowledge to induce defendants to sign the contract by taking some unfair advantage of them. On the contrary, Burton had told plaintiffs of the availability of defendants' house and it was Burton who conducted the contract negotiations. The contract itself shows that plaintiffs increased their initial offer while Burton reduced his commission, thus providing defendants with a greater net from the sale than they would have received under plaintiffs' first offer. *Cf. Lucey v. Shelton* (1962), 24 Ill. 2d 471, 182 N.E.2d 215 (evidence showed that plaintiffs had been induced to sign a document due to misrepresentations as to its nature and effect).

■ With regard to Evelyn Janus' health, defendants elicited the testimony of her doctor, who had been treating her since April 1976, before the contract was signed. Mrs. Janus' condition was known to defendants when they signed the contract and, although she was not able to work at that time, her health has apparently improved sufficiently for her to return to work for four hours each day. Although a change subsequent to the execution of a contract may allow a party to avoid performance where specific performance would cause a peculiar hardship or be inequitable (*Iglehart v. Vail* (1874), 73 Ill. 63; *Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 312 N.E.2d 42), such is not the case here. The only change in Mrs. Janus' condition was one of improvement, and she was fully informed of the state of her health, as were her husband and sister, the other defendants, when the contract was executed.

Ultimately, the granting of specific performance lies within the sound discretion of the trial court. (*Harper v. Kennedy* (1958), 15 Ill. 2d 46, 52, 153 N.E.2d 801, 804; *Greenwood v. Commercial National Bank* (1955), 7 Ill. 2d 436, 440, 130 N.E.2d 753, 756.) The decision to allow specific performance must be supported by evidence that is clear and convincing (*Greenwood*) and is based on all of the surrounding circumstances. (*Harper v. Kennedy*.) We find ample evidence to support the trial court's

conclusions of fact and finding that the equities of the case lie with plaintiffs. Consequently, we hold that the trial court's order of specific performance was proper and that order is accordingly affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.